THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DEWAYNE DIESTELHORST, Defendant-Appellee.

Fourth District  No. 4—93—0493

Opinion filed December 28, 1993.

Vince Moreth, State's Attorney, of Carlinville (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE KNECHT delivered the opinion of the court:

The State appeals from the trial court's order rescinding the statutory summary suspension of the defendant Dewayne Diestelhorst's driver's license. (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1(b).) Defendant has not filed an appellee's brief. However, as the record is simple and the claimed errors are such that this court can easily decide them without the aid of an appellee's brief, we shall do so. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495.

Shortly before midnight on March 17, 1993, an Illinois State Police trooper observed a black Toyota which failed to signal a left turn at an intersection. The trooper halted the Toyota, which was driven by Diestelhorst. The trooper noticed a strong odor of alcohol on Diestelhorst's breath, his face was flushed and his speech was slurred. An unopened beer can was also present in the car. Diestelhorst took and failed a field sobriety test. He was arrested for driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1991, ch. 95½, par.11—501(a)(2)).

The trooper requested Diestelhorst to submit to a breathalyzer test. (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1.) He read and provided Diestelhorst with a copy of the warning to motorist as required by statute (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c)); however, the warning did not accurately reflect the explanation of who qualified as a first-time offender.

Section 11—501.1(c) of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c)) provides for a warning to motorists apprising them their driving privileges will be suspended if they refuse to take a breathalyzer test, or submit to a test revealing a blood-alcohol content (BAC) of 0.10 or greater. The notice must set forth the minimum term of suspension for first-time and repeat offenders. A first-time offender is basically an individual who has not, within the previous five years, been convicted of DUI, assigned court supervision for DUI, convicted in another State of DUI or an offense similar to the Illinois offense of DUI, or had his driver's license suspended as the result of a refusal to take a breathalyzer test or submitting to a test revealing a BAC in excess of the legal limit, unless later found not guilty of DUI. (Ill. Rev. Stat. 1991, ch. 95½, par. 11—500.) The license of a first-time offender submitting to a breathalyzer test revealing a BAC in excess of the legal limit will be suspended for a minimum of three months, while the license of a repeat offender failing the test will be suspended for a minimum of one year. The license of a first-time offender refusing the test will be suspended for a minimum of six months, while the license of a repeat offender refusing the test will be suspended for a minimum of two years. Ill. Rev. Stat. 1991, ch. 95½, par. 6—208.1.

In the portion of the warning which explained the definition of a first-time offender, the trooper had crossed out "five" and written in "ten" with respect to the number of years during which previous DUI activity would *disqualify* the individual from being regarded as a first-time offender.

Diestelhorst submitted to the breathalyzer test, which revealed a BAC of 0.18, and was given notice of the suspension of his license. He filed a motion to rescind the suspension, alleging he was misinformed of the consequences of refusing the test or submitting to a test revealing a BAC in excess of the legal limit because the warning to motorist informed him his DUI activity in the past 10, rather than 5, years would disqualify him from being regarded as a first-time offender. Diestelhorst alleged this misinformation prevented him from giving informed consent to take the breathalyzer test.

At the hearing on the motion to rescind the statutory summary suspension, the defense argued Diestelhorst had been convicted of DUI six years prior to the March 17, 1993, incident. Thus, had Diestelhorst been given the proper warning to motorist, he would have known he qualified as a first-time offender and his driving privileges would be suspended for six months if he refused to take the test. However, in light of his six-year-old DUI conviction, the warning given to Diestelhorst would have led him to believe he did not qualify as a first-time offender and his driving privileges would be suspended for two years if he refused to take the test.

The trial court, relying on *People v. Monckton* (1989), 191 Ill. App. 3d 106, 547 N.E.2d 673, granted the motion to rescind, reasoning that had Diestelhorst known his license would only be suspended for six months—rather than two years—if he refused the test, he might have chosen to refuse to take the test rather than acquiescing. The court noted Diestelhorst might have been willing to lose his driving privileges for six months rather than risk incriminating himself by taking the breathalyzer test; however, Diestelhorst, believing he faced a two-year suspension if he refused the test, may have decided to take his chances and agree to the breathalyzer test, hoping he would not register a BAC in excess of the legal limit.

Upon being arrested for DUI, the motorist's driving privileges shall be suspended if the motorist either refuses to take a breathalyzer test, or submits to a breathalyzer test which reveals a BAC in excess of the legal limit. This suspension is mandatory and will occur unless the court grants a motion to rescind the suspension. (Ill. Rev. Stat. 1991, ch. 95½, par. 6—208.1(a).) In addition to the statutory summary suspension, the defendant may be prosecuted for the criminal offense of DUI. Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.

The statutory summary suspension proceedings are not a part of the criminal prosecution of the offense of DUI. They are separate and distinct proceedings. The legislature had provided that a person failing or refusing to take a breathalyzer test *shall* receive a summary suspension of his driving privileges. This is an administrative function performed by the Secretary of State and is a regulatory measure, not part of the punishment for DUI. As such, the suspension of the driving privileges progresses independent of the criminal prosecution for DUI and may be held after the disposition of the criminal charge. *People v. Meyer* (1988), 166 Ill. App. 3d 1030, 1032-33, 520 N.E.2d 1244, 1245.

An inadequate warning, which precludes the motorist from making an informed decision regarding whether to refuse or comply with the request to take the test, may result in the rescission or reduction of the suspension. See *People v. Engelbrecht* (1992), 225 Ill. App. 3d 550, 557, 588 N.E.2d 452, 456-57; *People v. McCollum* (1991), 210 Ill. App. 3d 11, 15, 568 N.E.2d 493, 496.

Under current law, the term of suspension imposed upon a motorist refusing to submit to a test is double that which is imposed upon submission to a test revealing a BAC in excess of the legal limit. (Ill. Rev. Stat. 1991, ch. 95½, par. 6—208.1(a).) A motorist who is advised refusal bears a lesser or equal term of suspension than submitting to a test revealing a BAC in excess of the legal limit, and based upon this information refuses to submit to the test, thus incurring the more lengthy term of suspension, is entitled to relief. This is because the warning given to him led him to believe he was making the choice which would result in a shorter or equal term of suspension, when, in fact, refusing the test resulted in a more lengthy term of suspension.

Thus, in *Engelbrecht*, the defendant was held to have made a *prima facie* case for rescission of the suspension where he was informed refusal to submit to the test bore a term of suspension *equal* to that imposed upon submission to a test revealing a BAC in excess of the legal limit. Engelbrecht was arrested for DUI on May 25, 1990. The warning given to him provided both refusal of the test and submission to a test revealing a BAC in excess of the legal limit would result in a loss of his driving privileges for a minimum of 12 months. *Engelbrecht*, 225 Ill. App. 3d at 552, 588 N.E.2d at 453.

This warning was consistent with a former version of section 6—208.1(a) of the Code, but inconsistent with the version of section 6—208.1(a) in effect at the time of the arrest (see Ill. Rev. Stat.

1989, ch. 95½, par. 6—208.1(a)). Prior to September 21, 1989, a repeat offender was subject to a one-year loss of his driving privileges whether he refused to submit to a test, or submitted to a test revealing a BAC of 0.10 or greater. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—208.1(a)(3).) However, effective September 21, 1989, the period of suspension imposed upon a repeat offender who refuses to submit to the test was increased to two years. Ill. Rev. Stat. 1989, ch. 95½, par. 6—208.1(a).

Engelbrecht, who was not a first offender as defined by the statute, refused to take the test and his license was later suspended for a minimum term of two years. (*Engelbrecht*, 225 Ill. App. 3d at 552, 588 N.E.2d at 453-54.) Engelbrecht filed a motion to rescind the statutory summary suspension. At the close of his evidence, the trial court granted the State's motion for a directed finding. (*Engelbrecht*, 225 Ill. App. 3d at 553, 588 N.E.2d at 454.) The Second District Appellate Court reversed, finding Engelbrecht was given a materially inaccurate and misleading warning, and this was sufficient to establish a *prima facie* case for the recission of the statutory suspension. The court reversed the directed finding in favor of the State, and remanded to the trial court for the continuation of the hearing. *Engelbrecht*, 225 Ill. App. 3d at 557, 588 N.E.2d at 456-57.

The warning given to Engelbrecht was misleading because it led him to believe he could not receive a lesser term of suspension by submitting to the test. Engelbrecht was precluded from making an informed decision regarding whether to submit to the test. Had Engelbrecht been adequately advised, he might have made a decision to submit to the test, thus receiving a shorter term of suspension. Conversely, Diestelhorst was not led to believe refusing the test bore an equal or lesser term of suspension than submitting to a test revealing a BAC in excess of the legal limit. Moreover, Diestelhorst, who received a three-month suspension, could not have made a decision which would have resulted in a lesser term of suspension.

The warning given to Engelbrecht was also misleading because it led him to believe the consequences of his choice were a one-year suspension, when, in actuality, a two-year suspension would be imposed. Where a motorist is led to believe the consequences of his decision are *less* than the consequences actually mandated by statute, he is entitled to a rescission or reduction of the term of suspension in accordance with representations made to him by the arresting officer.

Being led to believe the term of suspension may be effectively avoided by choosing a certain course of action lies on the extreme of being led to believe the consequences are less than those actually imposed by statute. Thus, where the arresting officer leads the motorist to believe he can effectively avoid suspension of his driving privileges by making a certain choice, the motorist making that choice and incurring a suspension as a result may be entitled to rescission of the suspension. See *People v. Znaniecki* (1989), 181 Ill. App. 3d 389, 392, 537 N.E.2d 16, 17; *Monckton*, 191 Ill. App. 3d at 109, 547 N.E.2d at 674.

In *Znaniecki* (181 Ill. App. 3d 389, 537 N.E.2d 16), the motorist was arrested for DUI and requested to take a test to reveal his BAC. He was warned of the consequences of refusing to take the test, but was not informed of the consequences of a test revealing a BAC in excess of the legal limit. (*Znaniecki*, 181 Ill. App. 3d at 391, 537 N.E.2d at 17.) Znaniecki submitted to the test, which revealed a BAC in excess of the legal limit. Znaniecki's driving privileges were summarily suspended, and he filed a petition to rescind the suspension, which was denied. (*Znaniecki*, 181 Ill. App. 3d at 390, 537 N.E.2d at 16.) Reversing, the Third District Appellate Court noted the absence of a warning regarding the consequences of taking a test which revealed a BAC of 0.10 or greater did not permit Znaniecki to make an intelligent, knowing and informed decision. The court held "[i]n order to properly warn a defendant who is arrested for DUI, he must be completely informed, meaning he should be warned of the consequences of his refusal to submit to the test or tests requested *as well as* the consequences of submitting to the test or tests requested which disclose a BAC of 0.10 or greater." (Emphasis in original.) *Znaniecki*, 181 Ill. App. 3d at 392, 537 N.E.2d at 17.

This warning was inadequate because by warning Znaniecki of the consequences of refusing the test, but not informing him submitting to a test which revealed a BAC in excess of the legal limit would also result in a suspension of his driving privileges, Znaniecki may have been led to believe he could avoid suspension of his driving privileges merely by submitting to the test.

In *Monckton* (191 Ill. App. 3d 106, 547 N.E.2d 673), after being arrested for DUI and asked by the arresting officer to submit to a breathalyzer test, Monckton expressed uncertainty, stated his livelihood depended on the retention of his driving privileges, and requested the officer's advice regarding whether he should submit to the test. The officer advised Monckton he could get a judicial driv-

ing permit (JDP) if he took the breathalyzer test, but would lose his driving privileges for one year if he refused to take the test. Monckton submitted to the test, which revealed a BAC of 0.17. Monckton claimed he submitted to the test because he wanted to get a JDP. *Monckton*, 191 Ill. App. 3d at 107-08, 547 N.E.2d at 673-74.

Monckton filed a motion to rescind the suspension. The trial court found the officer's statements regarding the JDP invalidated the warning to Monckton. Monckton later filed a motion to suppress the results of the test in the DUI prosecution, which was denied. He was subsequently convicted of DUI. Reversing his conviction, the Third District Appellate Court noted the Code reflected the legislature's desire to prohibit involuntary breath tests and to allow a motorist to make a knowing withdrawal of his implied consent to submit to such tests, so long as he is willing to bear the consequences (*e.g.*, the loss of driving privileges as the result of refusing to take the test). The appellate court found Monckton was misled by the officer's statements and consented to the test as the result of those statements. The court found the summary suspension predicated upon the results of the test could not stand, nor could the results be introduced into evidence in the DUI proceeding, because to do so would defeat the legislature's objective of allowing a defendant to make a knowing and voluntary decision regarding the test and allow the State to profit from its deception. *Monckton*, 191 Ill. App. 3d at 109, 547 N.E.2d at 674.

*Monckton* was later overruled to the extent it provided the results of a breathalyzer test should be suppressed in a DUI conviction where the motorist was prevented from giving knowing consent to submit to the test. (*People v. Ayres* (1992), 228 Ill. App. 3d 277, 280, 591 N.E.2d 931, 933.) In *Ayres*, the Third District Appellate Court noted the suspension of driving privileges, pursuant to section 11—501.1 of the Code, is separate and distinct from the prosecution for DUI pursuant to section 11—501. Thus, the court found, consent to the test, required by section 11—501.1, is irrelevant to the DUI prosecution conducted pursuant to 11—501. (*Ayres*, 228 Ill. App. 3d at 280, 591 N.E.2d at 933.) However, *Monckton*, as it pertains to suspension of driving privileges, remains good law.

In *Znaniecki* and *Monckton*, rescission of the suspension of driving privileges was appropriate because the information provided by the officers prevented the motorists from making informed decisions. Znaniecki was led to believe a term of suspension would not be imposed if he submitted to the test, even if the test revealed a

BAC in excess of the legal limit. The warning provided to Monckton was misleading in two respects. First, Monckton was led to believe he would only be eligible for a JDP if he submitted to the test. The availability of a JDP does not turn upon whether the motorist submits to the test; rather, a first-time offender may, in the exercise of the court's discretion, be granted a JDP regardless of whether the suspension was imposed upon a refusal to submit to the test or the submission to a test revealing a BAC in excess of the legal limit. (See Ill. Rev. Stat. 1991, ch. 95½, par. 6—206.1(a).) The warning was also misleading because Monckton was led to believe he would obtain a JDP as a matter of course. A JDP is not automatically granted; rather, it is granted only in the exercise of the court's discretion after determination of the motorist's eligibility for such a permit and consideration of several other factors. See Ill. Rev. Stat. 1991, ch. 95½, par. 6—206.1.

Thus, both Znaniecki and Monckton were led to believe they could avoid, or effectively avoid, a term of suspension by making a given choice, and a term of suspension was imposed although they made that choice. Moreover, Monckton was induced to submit to the test by the officer's erroneous statement that a JDP would only be available if he submitted to the test. Diestelhorst, however, was not led to believe he could avoid a term of suspension or obtain a JDP, as a matter of course, if he submitted to the test. Nor was Diestelhorst induced to make a given choice by the officer. Accordingly, Diestelhorst is not entitled to a rescission of the suspension of his driving privileges.

Nor is Diestelhorst entitled to a reduction of the term of suspension. Where the defendant is merely led to believe the term of suspension for a given choice is less than that actually imposed by statute, he may not be entitled to rescission of the suspension, but may be granted a reduction of the suspension to the length of which he was advised. In *McCollum* (210 Ill. App. 3d 11, 568 N.E.2d 493), this court modified the denial of a petition to rescind the summary suspension where McCollum was warned a refusal to take the test would result in a suspension of his driving privileges for six months. In actuality, McCollum was a repeat offender and, therefore, subject to a two-year term of suspension upon refusal of the test. (*McCollum*, 210 Ill. App. 3d at 12, 568 N.E.2d at 494.) We concluded the applicable statutes require the defendant to be warned of all the consequences, including an explanation that the sentence is longer when the motorist is not a first offender. Since McCollum was admonished his driving privileges would be sus-

pended for six months, and they were actually suspended for two years, we found he was entitled to relief. We determined that although rescinding the suspension would be one remedy, it would provide McCollum with more than what he was entitled to; since, under the warning given, he believed his choice would subject him to a six-month suspension, we reduced his suspension from two years to six months. *McCollum*, 210 Ill. App. 3d at 15, 568 N.E.2d at 496.

The present case is distinguishable from *McCollum*. The warning provided to McCollum was misleading as it led him to believe the consequences of his choice were less than those which would actually be imposed. McCollum was led to believe a refusal to submit to the test would result in a six-month suspension of his driving privileges. Since the term of suspension required to be imposed was actually two years, McCollum was prevented from making an informed decision regarding whether to submit to the test. Had McCollum known the true term of suspension, he might have decided to submit to the test. Since the consequence McCollum was willing to bear, pursuant to the officer's warning, was a six-month suspension of his driving privileges, we reduced the term of suspension from two years to six months. Conversely, in the present case, Diestelhorst was not led to believe his submission to the test revealing a BAC in excess of 0.10 would result in a term of suspension less than the three-month term mandated by section 6—208.1(a) of the Code. Thus, the term of suspension imposed upon Diestelhorst was not greater than the term he was led to believe would be imposed.

*Engelbrecht, Znaniecki, Monckton,* and *McCollum* all have one factor in common. In all of these cases, the defendants received an inaccurate warning and were prejudiced as a result, either because they thought their choice would result in (1) the least term of suspension (*Engelbrecht*, 225 Ill. App. 3d at 557, 588 N.E.2d at 456-57), (2) no suspension (*Znaniecki*, 181 Ill. App. 3d at 491-92, 537 N.E.2d at 17), (3) a JDP would be available as a matter of course (*Monckton*, 191 Ill. App. 3d at 109, 547 N.E.2d at 674), or (4) a term of suspension less than that which was actually imposed (*McCollum*, 210 Ill. App. 3d at 15, 568 N.E.2d at 496).

In the present case, either choice made by Diestelhorst would result in a suspension of his driving privileges. Since he submitted to the test, his BAC is known. Since his BAC was in excess of the legal limit, he was subject to suspension if he submitted to the test. Had he chosen to refuse to submit to the test he would have also been subject to suspension.

Diestelhorst received the shortest term of suspension possible. The statute provides for terms of suspension of three months, six months, one year and two years, depending on whether the test is refused or reveals a BAC of 0.10 or greater, and whether the defendant is a first-time or repeat offender. Diestelhorst received a three-month suspension, the shortest term available.

Diestelhorst was not led, by the trooper, to believe his choice would result in a suspension for a lesser period than the period which he received. Finally, the trooper did not coerce Diestelhorst to make a given choice.

Since the present case is distinguishable from *Monckton*, we conclude the circuit court's reliance on *Monckton* as the basis for rescinding Diestelhorst's suspension was improper. Under the applicable authority, Diestelhorst is not entitled to a rescission or reduction of his term of suspension. Accordingly, we conclude the circuit court of Macoupin County erroneously rescinded Diestelhorst's summary suspension.

Reversed.

McCULLOUGH, P.J., and GREEN, J., concur.