Marissa K. BENNETT, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. WD 49204.

Missouri Court of Appeals, Western District.

Dec. 20, 1994.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Chris Jordan, Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and SMART and ELLIS, JJ.

ELLIS, Judge.

The Director of Revenue appeals a judgment of the Circuit Court of Cole County permanently staying and setting aside the Director's revocation of Marissa K. Bennett's driving privileges for refusal to submit to a chemical test pursuant to § 577.041.[1] The trial court found that the consequences of her refusal to submit to the test were inadequately presented to Bennett as specified by § 577.041.1. We affirm.

On November 18, 1993, Bennett was stopped by Officer Stiefferman of the Jefferson City Police Department after the officer observed that she failed to stop for a stop sign. After stopping her, the officer noted that Bennett was clumsy in her movements and acting sluggish, and he detected a slight odor of alcohol about her person. Officer Stiefferman administered field sobriety tests to Bennett, two of which she passed, and two of which she failed. As a result, he arrested her for driving while intoxicated. The officer then conducted a search of Bennett's vehicle and found an "illegal substance," [2] and he therefore decided to have a blood test performed to determine whether she had been smoking marijuana. He then transported Bennett to St. Mary's Hospital. Officer Stiefferman testified that he read Bennett the terms of the implied consent law from the alcohol influence report he completed and asked her to take a blood test, which she refused. In particular, Officer Stiefferman stated that he told Bennett that if she refused the test, the Director *"could revoke"* her license for a year. The alcohol influence report itself was also admitted into evidence. The section Officer Stiefferman testified he read to Bennett states:

> You are under arrest for driving while intoxicated. To determine the alcohol/drug content of your blood, I am requesting you submit to a chemical test of

---

1. All statutory references are to RSMo Supp. 1993 unless otherwise noted.

2. We offer no comment on the legality of the search as it is not an issue in this appeal, and is irrelevant to the question presented.

your ... Blood.... If you refuse to take the test(s), I must file a sworn affidavit with the Director of Revenue who *may revoke your Drivers License for one year.* (Emphasis added.) In addition, after her refusal, Officer Stiefferman prepared and gave Bennett a form styled "REFUSAL TO SUBMIT TO ALCOHOL CHEMICAL TEST NOTICE OF REVOCATION OF YOUR DRIVING PRIVILEGE/15–DAY DRIVING PERMIT," and Bennett surrendered her license to him.

This case involves interpretation of § 577.041 after its amendment by the General Assembly in 1993. Prior to the amendments, if a chemical test was refused by a person under arrest, the arresting officer was directed to submit a sworn report to the Director of Revenue attesting, if he so believed, that the arrestee refused to submit to the test after being requested to do so. *See* § 577.041.1, RSMo 1986; RSMo Supp.1987; and RSMo Supp.1991. Upon receipt of such a report from the officer, the Director was then to revoke the arrestee's license for one year. *See id.* As a result of the 1993 amendments, § 577.041.1 now provides that if a person under arrest refuses to submit to an authorized chemical test after a request by the arresting officer, the officer shall, on behalf of the Director, immediately "serve [a] notice of license revocation personally upon the arrested person" and take possession of her driver's license. The statute further provides that the officer must then issue a 15–day temporary permit on the Director's behalf, and must also give the arrestee notice of her right to file a petition for review to contest the license revocation. Section 577.041 also contains other procedural requirements and safeguards. The one at issue in this appeal provides:

The request of the arresting officer [to submit to a chemical test] shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person ... that his license *shall be immediately revoked* upon his refusal to take the test.

§ 577.041.1 (emphasis added). The highlighted language was added by the General Assembly when it amended § 577.041 in 1993, and is a significant change from prior versions of the statute, which only required

the arresting officer to inform the person being requested to submit to the test "that his license *may be revoked* upon his refusal to take the test." *See* § 577.041.1, RSMo 1986; RSMo Supp.1987; and RSMo Supp. 1991 (emphasis added).

As can be seen, the evidence at trial showed that Officer Stiefferman informed Bennett that her license *"could"* be revoked for one year if she refused the test, and that the Director *"may"* revoke her license for one year. However, he clearly failed to inform her that her driver's license *"shall be immediately revoked"* upon her refusal to take the test. The trial court concluded that because the information supplied to Bennett did not adequately apprise her of the consequences of her failure to submit to the chemical test as required by § 577.041.1, the Director's administrative revocation of Bennett's license was improper.

On appeal of a trial court's decision on a challenge to a revocation of a drivers license for refusal to submit to a chemical test, we will affirm the decision of the trial court unless there is no substantial evidence to support it, the decision is contrary to the weight of the evidence, or the trial court erroneously declared or applied the law. *Gelsheimer v. Director of Revenue*, 845 S.W.2d 107, 109 (Mo.App.1993). We give due regard to the trial court's opportunity to judge the credibility of the witnesses, and where the testimony is in conflict, all fact issues are deemed to have been found in accordance with the result reached by the trial court. *Dudenhoeffer v. Director of Revenue*, 780 S.W.2d 701, 702 (Mo.App.1989). The Director argues one point in this appeal, asserting the trial court erroneously applied the law by holding that the warning given to Bennett was inadequate under the statute, and arguing, in effect, that "may revoke" and "could revoke" are the equivalent in meaning to "shall be immediately revoked." We disagree.

In *Jones v. Schaffner*, 509 S.W.2d 72, 77 (Mo.1974), our Supreme Court, in construing § 564.444, RSMo 1969 (a prior version of § 577.041), which contained a requirement that the arresting officer inform the arrested person that her license "may be revoked" upon refusing to submit to a test, stated that

"[t]he decisive question is … whether the statutory warning was given." Similarly, in *Collins v. Director of Revenue*, 691 S.W.2d 246, 252 (Mo. banc 1985), the Court held that under § 577.041.1, the arresting officer is obligated to "inform the arrestee of the consequences" of refusing to submit to the chemical test. It is, therefore, clear that the mandate of the statute to inform the arrested person of the consequences of a failure to submit to a test must be obeyed for there to be a valid revocation based on such refusal. *See generally Jones*, 509 S.W.2d at 77 (arresting officer must provide "adequate knowledge of the facts and consequences" of refusal); *Winters v. McNeill*, 772 S.W.2d 749, 752 (Mo.App.1989); § 577.041.5 (providing that if the trial court determines any issue in § 577.041.4, including the issue of whether or not the arrestee refused to submit to the test, "not to be in the affirmative, he shall order the director to reinstate the license or permit to drive.")

▮ ·Nevertheless, the Director argues that the change in the statutory warning language from "may be revoked" to "shall be immediately revoked" is unimportant. Logic, ordinary usage and plain meaning dictate otherwise. When interpreting a statute, the primary role of the court is to ascertain the intent of the legislature from the language used in the statute and, if possible, give effect to that intent. *Abrams v. Ohio Pac. Express*, 819 S.W.2d 338, 340 (Mo. banc 1991). In determining legislative intent, the words used in the statute are given their plain and ordinary meaning, which is generally derived from the dictionary. *Id.; Melahn v. Otto*, 836 S.W.2d 525, 527 (Mo.App. 1992). Each word of the statute should be considered and given meaning. *Hadlock v. Director of Revenue*, 860 S.W.2d 335, 337 (Mo. banc 1993). The legislature is presumed not to enact meaningless provisions, and when it amends a statute, it is also presumed to have intended the amendment

to have some effect or to accomplish some legislative purpose. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992); *State v. Salata*, 859 S.W.2d 728, 734 (Mo.App.1993).

▮ The word "may" is generally recognized as the equivalent of the word "can" and denotes a possibility, likelihood or contingency. *Webster's New Twentieth Century Dictionary* 1113 (2d ed. 1979). Similarly, the word "could" is "generally equivalent to 'can' in meaning and use, expressing especially a shade of doubt or a smaller degree of ability or possibility." *Id.* at 415. On the other hand, the word "shall" is usually used to express "compulsion, obligation or necessity…." *Id.* at 1666. In common usage, if one is told that something "may," "could" or "can" occur, the message conveyed is that there is a possibility of occurrence. If the expression is that something "shall" occur, certainty of occurrence is generally the intended and understood meaning. Moreover, as noted *supra*, § 577.041.1 was amended in 1993 so that the revocation for refusal to submit to a chemical test now occurs *immediately upon the refusal*, not necessarily at some unspecified later date upon the contingency of the Director receiving a sworn report from the arresting officer. *See, e.g., In re Green*, 511 S.W.2d 129, 131–33 (Mo.App. 1974); *Gerlach v. Spradling*, 540 S.W.2d 154, 155–56 (Mo.App.1976). Thus, we conclude that the 1993 changes in § 577.041.1 are significant and require that the warning given the arrested person clearly convey the message that upon a refusal, an immediate revocation of the person's license will occur.[3]

Recognizing the potential for this conclusion, the Director urges that we engraft a requirement on the statute that would require the motorist to prove she was prejudiced by the inaccurate warning.[4] She cites no Missouri authority for this proposition, but rather refers us to *Frank v. Department of Licensing*, 71 Wash.App. 585, 859 P.2d

---

3. Clearly, the "notice of revocation/15-day driving permit" given the arrestee after a refusal cannot "cure" the arresting officer's failure to provide a proper warning of the consequences of refusing in the first place.

4. We note that the Director has apparently urged this position in a very recent Eastern District

case involving another aspect of the General Assembly's 1993 amendments to § 577.041.1. *See Hertel v. Director of Revenue*, 887 S.W.2d 775, 776 & nn. 2–4 (Mo.App.1994). However, the court in *Hertel* remanded the case to the trial court so that an adequate record could be produced and did not consider her arguments on this issue. *Id.* at 776.

1248 (1993) and *People v. Diestelhorst,* 253 Ill.App.3d 867, 193 Ill.Dec. 24, 625 N.E.2d 1145 (1993). Neither case supports the result urged by the Director.

In the first case, Frank refused a chemical test after having been warned by the arresting officer that any such refusal " 'may be used in a criminal trial.' " *Frank,* 71 Wash. App. 585, 859 P.2d at 1249. His license was subsequently revoked. On appeal, Frank argued that although the arresting officer complied with Wash.Rev.Code § 46.20.308(2), which required the officer to " 'warn the driver ... that his or her refusal to take the test *may be used* in a criminal trial,' " that warning was insufficient because a different statute (Wash.Rev.Code § 46.61.517) and a subsequent judicial decision interpreting that statute supposedly made refusal evidence admissible and mandatory in criminal trials. *Id.* Thus, Frank reasoned, the officer should have gone beyond the language of the statute and advised him that his refusal to take the test "will" or "shall" be used in evidence at a criminal trial. *Id.* The court rejected Frank's argument, noting that the warning received by Frank contained the "exact statutory language" set out in Wash.Rev.Code § 46.20.308(2) and no portion of that warning was omitted or incorrectly stated by the arresting officer. 71 Wash.App. 585, 859 P.2d at 1250. Thus, *Frank* is inapposite since it was not a case where the arresting officer incorrectly or inaccurately warned the driver of the consequences of refusal based on the wording of the statute requiring that such a warning be given.[5]

Furthermore, the court in *Frank* distinguished *Welch v. Department of Motor Vehicles,* 13 Wash.App. 591, 536 P.2d 172 (1975), on the ground it involved a different clause of Wash.Rev.Code § 46.20.308(2) which requires the arresting officer to warn the driver that " 'his or her privilege to drive *will be revoked or denied* if he or she refuses to submit to the test.' " *Frank,* 71 Wash.App. 585, 859 P.2d at 1249 (emphasis added). The court in *Frank* explained that in *Welch,* the driver was advised that, if he refused a

breath test, he " 'could' " lose his license. *Frank,* 859 P.2d at 1250; *Welch,* 13 Wash. App. 591, 536 P.2d at 173. But as just observed, Wash.Rev.Code § 46.20.308(2) requires that the driver be warned that his or her license "will" be revoked upon refusal to submit to a test. The *Welch* court held that the warning was insufficient because the word "could" did not inform the driver that license revocation was a certainty. In doing so, the court stated:

> The certainty of a 6-month license revocation, after a proper warning and upon refusal, is absolute. The word "could," however, "merely expresses 'a contingency that may be possible' and nothing more." Its use in advising Welch informed him of the "possibility" of license revocation when, in reality, revocation is a certainty.
>
> The "obvious purpose" of the statutory warning "is to provide [the operator] the opportunity of exercising an intelligent judgment...." The warning here did not provide Welch with the opportunity to exercise the intelligent judgment which the mandatory language of the statute requires.
>
> \*   \*   \*   \*   \*   \*
>
> Our holding is that the opportunity to exercise intelligent judgment requires that the operator be advised of the mandatory effect of a refusal to be tested.

*Welch,* 536 P.2d at 173 (citations omitted). Based on its discussion of *Welch,* the court in *Frank* clearly recognized that *Welch* correctly declares Washington law on the subject with which it dealt. Thus, *Frank* wholly fails to support the Director's arguments and, in fact, is diametrically opposed to them. Washington law appears to be consistent with long-standing Missouri case law on the subject.

*Diestelhorst* is likewise of no assistance to the Director. The *Diestelhorst* court was confronted with a situation where the arrestee was given inaccurate information in the warning but the erroneous information did not affect his ability to make an intelligent judgment whether to refuse the test because

---

**5.** In *dicta,* the court did say that even if the warning had been inaccurate, Frank had not shown how he was prejudiced. 71 Wash.App. 585, 859 P.2d at 1251. However, this was certainly not the holding of the case and, of course,

*Frank* dealt with a warning regarding use of a refusal as evidence in a subsequent criminal case, rather than a warning regarding loss of license.

either choice he made would result in the shortest term of suspension possible. *Diestelhorst,* 253 Ill.App.3d 867, 193 Ill.Dec. 24, 27, 625 N.E.2d at 1148, 1151. Obviously, this is not the case in the instant appeal. Here, Officer Stiefferman led Bennett to believe that if she refused the test, her license *could, may* or *might* be revoked for a year, when in fact the law required that it be "immediately revoked upon [her] refusal to take the test." § 577.041.1. Moreover, the court in *Diestelhorst* cited numerous Illinois decisions holding that if a warning is given which misleads the driver, he or she is unable to make an informed decision and is entitled to rescission of the revocation. 253 Ill.App.3d 867, 193 Ill.Dec. at 26, 30, 625 N.E.2d at 1147, 1151. Thus, the cases relied on by the Director do not support the novel position she urges.

■ We should also point out that the Director's contention must fail not only for lack of legal authority, but for two additional reasons. First, the burden of proof is on the Director in reviews of revocation due to refusal to submit to chemical tests, and the Director must likewise offer evidence first in such proceedings. *Askins v. James,* 642 S.W.2d 383, 385 (Mo.App.1982); *Rowan v. Director of Revenue,* 870 S.W.2d 261, 262 (Mo.App.1994). To accept the Director's position would effectively shift the burden of proof in such cases, something we are unwilling to do. Furthermore, if the General Assembly had wanted to place the burden on the motorist to prove prejudice resulting from the failure of the arresting officer to give the required warning, it could have done so easily enough. It chose not to, and we will not judicially amend the statute to do so.

We therefore hold that Officer Stiefferman failed to give Bennett the mandatory warning required by § 577.041.1 that her license "shall be immediately revoked" upon her refusal to take the test. As a result, she could not make the informed decision contemplated by the General Assembly on whether to refuse the test, and therefore her revocation cannot stand. We expressly do not hold that an arresting officer must use the exact words of the statute in providing the mandatory warning. To the contrary, consistent with existing authority dealing with prior versions of the statute, a warning in substantially the language of the statute is sufficient. *See Winters v. McNeill,* 772 S.W.2d 749 (Mo.App.

1989); *Sell v. Goldberg,* 601 S.W.2d 665 (Mo. App.1980); *Gerlach v. Spradling,* 540 S.W.2d 154 (Mo.App.1976); *In re Green,* 511 S.W.2d 129 (Mo.App.1974); and *State v. Hanson,* 493 S.W.2d 8 (Mo.App.1973). Obviously, the cautious, simplest and best approach is for the arresting officer to use language that tracks the statute. However, any language which clearly conveys the message that the motorist's license shall be immediately revoked upon refusal to take the test is adequate.

The judgment of the trial court is affirmed.

All concur.