THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL J. JOHNSON, Defendant-Appellee.

Second District   No. 2—99—0827

Opinion filed September 8, 2000.

THOMAS, J., dissenting.

Douglas P. Floski, State's Attorney, of Oregon (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Byron Sloan, of Vella, Sparkman, Wheeler & Lund, P.C., of Rockford, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

On May 1, 1999, defendant, Michael J. Johnson, was charged with driving under the influence (DUI) of a drug (625 ILCS 5/11—501(a)(4) (West 1998)). The arresting officer's sworn report states that defendant submitted to chemical testing that disclosed the presence of a drug in his blood or urine that resulted from unlawful use or consumption. As a result of the test, the Secretary of State, having determined that defendant was a first offender, issued a confirmation of the statutory summary suspension (the suspension) of defendant's driver's license for a period of three months, effective July 11, 1999.

On June 4, 1999, defendant filed a petition to rescind the suspension, alleging, *inter alia*, that the arresting officer did not properly warn him of the consequences of taking or refusing to take the test pursuant to section 11—505.1(c) of the Illinois Vehicle Code (the Code) (625 ILCS 5/11—501.1(c) (West 1998)) (see 625 ILCS 5/6—208.1 (West 1998) (providing for various periods of statutory summary suspension)). The trial court conducted a hearing on defendant's petition on July 1, 1999. The parties stipulated to certain facts. It appears undisputed that the arresting officer did not accurately warn defendant, that defendant submitted to the test, and that he was a first offender as defined by statute. The trial court granted defendant's petition to rescind the suspension. The State appeals. We affirm.

In its written order, the trial court found that defendant was given warnings that "were not in compliance with 625 ILCS 5/6—208.1 in that the officer advised the Defendant that if he was not a first time offender he would be suspended for twenty-four (24) months and in fact the statute provides for a three year suspension." The trial court also found that defendant was a first offender and that he was not materially affected by the officer's admonishments regarding a possible suspension.

■ Section 11—501.1(c) of the Code requires that a driver requested to submit to chemical testing be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension of the person's driver's license as provided for in section 6—208.1 of the Code. 625 ILCS 5/11—501.1(c) (West 1998).

Effective January 1, 1999, section 6—208.1(a) of the Code provides for the following periods of license suspension starting from the effective date of the statutory summary suspension. Briefly summarized here, these periods are (1) *six months* for a refusal or failure to complete a test or tests to determine alcohol, drug, or intoxicating compound concentration pursuant to section 11—501.1; (2) *three months* following the person's submission to a chemical test that disclosed an alcohol concentration of 0.08 or more, or any amount of a drug, substance, or intoxicating compound resulting from the unlawful use or consumption of cannabis, a controlled substance, or an intoxicating compound (as proscribed by statute); (3) *three years* for any person other than a first offender who refuses or fails to complete a test or tests; or (4) *one year* for any person other than a first offender following submission to a chemical test that disclosed an alcohol concentration of 0.08 or more, or any amount of a drug, substance, or compound resulting from the unlawful use or consumption of cannabis, a controlled substance, or an intoxicating compound (as proscribed by statute). See 625 ILCS 5/6—208.1(a) (West 1998).

In reaching its decision to rescind defendant's license suspension, the trial court relied on and quoted *People v. Engelbrecht*, 225 Ill. App. 3d 550 (1992), a Second District case that states: "To hold that an inaccurate or deceptive warning may satisfy the requirement of section [11—501.1(c)] would disserve the purpose of the warning requirement and perhaps even make the requirement itself superfluous." *Engelbrecht*, 225 Ill. App. 3d at 557. The trial court declined to follow a case asserted by the State to be more applicable (*People v. Diestelhorst*, 253 Ill. App. 3d 867 (4th Dist. 1993) (concluding under the facts that the defendant was not misled by inaccurate warnings into believing that his submission to the test, whose result was over the legal limit,

would subject him to a term of suspension less than the three-month term mandated by statute; the term of suspension imposed was in fact not greater than the term he was led to believe would be imposed; regardless of his choice, he would be subject to the suspension; rescission order reversed)).

In the present case, defendant has not filed an appellee's brief. As the record is simple and the claimed error can be readily addressed, this court will decide the issue in accordance with the guidelines of *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976).

According to the State, the issue here is whether an arresting officer's inaccurate warnings regarding the possible consequences of taking or refusing a test (*i.e.*, the length of suspension), which do not materially affect the particular defendant receiving the warnings, will act to void the warnings given to the defendant and thus require the rescission of the suspension. Relying on *Diestelhorst*, the State posits that the rescission of a license suspension is not required "where the motorist has not been misled, by inaccurate warnings or police statements, that the consequences of his decision are less than are the actual consequences." In other words, the State argues that the defendant must receive an inaccurate warning and must be prejudiced as a result of the inaccurate warning before rescission can be granted. The State asks this court to revisit and clarify its decision in *Engelbrecht*.

In *Engelbrecht*, the defendant was arrested for DUI (alcohol). The warning given to him provided that either the refusal to take the test or submission to a test revealing a blood-alcohol concentration (BAC) in excess of the legal limit (if defendant was not a first offender) would result in the suspension of his driver's license for a minimum of *12 months*. While this warning was consistent with an earlier version of the Code, it was inconsistent with the version in effect at the time of the arrest. At the time of the arrest, the period of suspension for a repeat offender who refused to submit to a test had increased from one year to two years. The defendant was not a statutory first offender. He refused to take the test, and his license was later suspended for the minimum *two-year* term. At the close of the hearing on his petition to rescind, the trial court granted the State's motion for a directed finding. We reversed the directed finding and remanded the cause for further proceedings. We concluded that the defendant had made a *prima facie* case for rescission because the warning misstated the consequences of a refusal to submit to the required test and it did not comply with the requirements of section 11—501.1(c) of the Code.

■ We pointed out in *Engelbrecht* that section 11—501.1(c) imposed a mandatory obligation on the arresting officer to warn the

motorist that the driver's refusal to submit to testing would result in the statutory summary suspension of the driver's license as provided by section 6—208.1 of the Code. We stated that, at the very least, the language of the section appeared "to obligate arresting officers to avoid giving materially inaccurate or misleading warnings." *Engelbrecht*, 225 Ill. App. 3d at 556. We noted that the failure to give the required warnings is a ground for the rescission of the suspension. The ostensible purpose of the warning requirement is to allow a motorist to make an informed decision between being tested and refusing testing; therefore, the motorist must be warned of the consequences of either choice. *Engelbrecht*, 225 Ill. App. 3d at 556-57; Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1(b)(4) (now 625 ILCS 5/2—118.1(b)(4) (West 1998)). We caution here, however, that this does not mean the defendant must subjectively understand *all* of the possible consequences of refusing to take a blood-alcohol test before the State may summarily suspend his or her driver's license. See *People v. Wegielnik*, 152 Ill. 2d 418, 424-27 (1992); *People v. Hart*, 313 Ill. App. 3d 939, 941 (2000). Rather, section 11—501.1(c) requires only that the driver be informed that refusing a test will result in the summary suspension of his or her driving privileges for a period of time outlined in section 6—208.1 of the Code. *Hart*, 313 Ill. App. 3d at 941-42.

We observed in *Engelbrecht* that the defendant's state of mind at the time of the arrest is not a relevant consideration; rather, "the test is whether the defendant was issued a warning that was objectively accurate and informative." *Engelbrecht*, 225 Ill. App. 3d at 557, relying in part on *People v. Znaniecki*, 181 Ill. App. 3d 389, 392 (1989) (stating that an incomplete warning required rescission).

In *People v. Estrada*, 313 Ill. App. 3d 245 (2000), the defendant, Steven Estrada, was charged with driving under the influence of cannabis on January 29, 1999. He was subsequently notified of the six-month suspension of his driver's license. He petitioned to rescind the suspension and alleged, *inter alia*, that the arresting officer read him a "warning to the motorist" that incorrectly stated the law. The warning informed him that, if he was a first offender and he refused to take a chemical test, his license would be suspended for a minimum of six months; if he was a first offender and he submitted to testing that revealed a BAC of 0.08 or above, or any amount of cannabis, his license would be suspended for a minimum of three months; and that a motorist was not considered a first offender if, in the five years prior to his arrest, he submitted to chemical testing that revealed a BAC of 0.08 or more. The warning also noted that a nonfirst offender who refused chemical testing would receive a two-year summary suspension of his license. See 625 ILCS 5/6—208.1(a)(3) (West 1996). Finally, the warn-

ing informed the defendant that, if he was under the age of 21, he was a first offender unless he had a previous suspension for refusing a chemical test or he had submitted to a test that disclosed a BAC greater than 0.00. See 625 ILCS 5/11—501.8 (West 1996). His response to the warning was taken as a refusal. *Estrada*, 313 Ill. App. 3d at 246.

At the hearing on Estrada's petition to rescind, the trial court ultimately found that the warning given to him was defective because it did not reflect the January 1, 1999, change in the law calling for a three-year, rather than a two-year, suspension for a nonfirst offender who refused chemical testing. See 625 ILCS 5/6—208.1 (West 1998). The court found that this error was not harmless and rescinded the suspension.

The State appealed and argued that the rescission was improper because, as a first offender, Estrada was properly warned of the consequences *to him* of taking or refusing to take the test and that Estrada was not prejudiced by the inaccuracies in the warning. Estrada pointed out that the warning was defective in two respects. First, the legal BAC limit had changed from 0.10 to 0.08, effective July 2, 1997 (625 ILCS 5/6—206(a)(31) (West 1998)). Second, Estrada argued that the warning incorrectly informed him that, if he was not a first offender, he would be subject to a two-year suspension if he refused a chemical test. Instead, at the time of his arrest, he would actually have been subject to a three-year suspension if he had been a nonfirst offender who refused chemical testing. See 625 ILCS 5/6—208.1(a)(3) (West 1998).

Relying on *Engelbrecht*, the reviewing court first stated that the purpose of the warning to the motorist is to allow the motorist to make an intelligent decision between being tested and refusing testing; therefore, the motorist must be completely informed of the consequences of either choice. The *Estrada* court also pointed out that the failure to give the required warnings is a ground for the rescission of the suspension. The court stated, "The test is whether the petitioner was issued a warning that was objectively accurate and informative to him." *Estrada*, 313 Ill. App. 3d at 248, citing *Engelbrecht*, 225 Ill. App. 3d 550.

Although the reviewing court acknowledged the State's argument that Estrada was a first offender and was thus not subject to either a two-year or a three-year suspension, the court nevertheless ruled that the warning to Estrada was materially inaccurate and misleading. The court also determined that the "motorist under age 21" warning did not serve to cure the defects. The reviewing court concluded that the trial court's decision to rescind the suspension was not against the

manifest weight of the evidence. *Estrada*, 313 Ill. App. 3d at 248. Significantly, the *Estrada* court does not appear to have engaged in a detailed analysis of whether the particular defendant was prejudiced by the inaccurate warning. Rather, the court appears to have applied an objective test that we subscribed to in *Engelbrecht*, namely, whether the defendant was issued a warning that was objectively accurate and informative to him. We agree with the approach taken by the Third District in *Estrada* in reliance on our decision in *Engelbrecht*.

In *Diestelhorst*, 253 Ill. App. 3d 867, the defendant was arrested on March 17, 1993, for DUI (alcohol). He was provided a warning -- required by the 1991 version of the statute. However, the warning did not accurately explain who qualified as a first offender. Under the applicable statute, a first offender was an individual who had not, within the previous five years, been convicted of DUI, assigned court supervision for DUI, convicted in another state of DUI or an offense similar to the Illinois offense of DUI, or had his license suspended as a result of a refusal to take a test or submitting to a test revealing a BAC in excess of the legal limit, unless later found not guilty of DUI. Ill. Rev. Stat. 1991, ch. 95½, par. 11—500 (now 625 ILCS 5/11—500 (West 1998)).

Under the provisions then in effect, the license of a first offender whose test revealed a BAC in excess of the legal limit would be suspended for a minimum of three months, while that of a repeat offender who failed the test would be suspended for a minimum of one year. The license of a first offender refusing the test would be suspended for a minimum of six months, while that of a repeat offender who refused the test would be suspended for a minimum of two years. Ill. Rev. Stat. 1991, ch. 95½, par. 6—208.1.

In that part of the warning explaining the definition of a first offender to Diestelhorst, the trooper had crossed out "five" and written in "ten" regarding the number of years during which previous DUI activity would disqualify him from being regarded as a first offender. Diestelhorst took the test, which revealed a BAC of 0.18, and his license was suspended for three months. He petitioned the trial court to rescind the suspension, arguing that he was misinformed of the consequences of refusing the test or submitting to a test revealing a BAC in excess of the legal limit because the warning to the motorist informed him that his DUI activity in the past 10, rather than 5, years would disqualify him from being regarded as a first offender.

Diestelhorst had been convicted of DUI six years prior to the March 17, 1993, incident. He argued that, had he been given the proper warning, he would have known that he qualified as a first offender and his license would be suspended for six months if he refused

to take the test. However, in light of his prior conviction, the warning given to him would have led him to believe he did not qualify as a first offender and his driving privilege would be suspended for two years if he refused to take the test. The trial court granted rescission. The court reasoned that, had Diestelhorst known his license would only be suspended for six months rather than two years if he refused the test, he might have chosen to refuse the test rather than risk incriminating himself by taking the test. *Diestelhorst*, 253 Ill. App. 3d at 875.

On appeal, the reviewing court concluded that Diestelhorst was not led to believe that his submission to the test revealing a BAC in excess of 0.10 would result in a term of suspension of less than the three-month term mandated by the statute. The term of suspension was not greater than the term he was led to believe would be imposed. After reviewing several opinions, the reviewing court concluded that rescission would be appropriate where the defendants received inaccurate warnings and were prejudiced as a result, either because the defendants thought their choice would result in the briefest term of suspension; no suspension at all; a judicial driving permit becoming available as a matter of course; or a term of suspension less than that which was actually imposed. *Diestelhorst*, 253 Ill. App. 3d at 875.

The reviewing court found that either choice made by Diestelhorst would result in a suspension of his driving privileges—either because he submitted to the test and his BAC was over the legal limit, or because his refusal of the test would also have subjected him to a suspension. The court concluded that Diestelhorst was not misled by the trooper into believing that his choice would result in a suspension for a lesser period than the period that he actually received. The court reversed the rescission. *Diestelhorst*, 253 Ill. App. 3d at 876.

As can be seen by this summary of the decision, the *Diestelhorst* approach involves detailed and, we believe, unnecessary, analysis and inquiry into questions of prejudice to the defendant or of his mental state to determine whether rescission is appropriate in a particular case. We believe that *Engelbrecht* and *Estrada* have applied a simpler, more pragmatic, bright-line test to determine whether rescission is an appropriate remedy in a given case, and we adhere to this approach. Correct warnings are statutorily mandated. Just as a police officer must be able to rely upon an objective fact of refusal without regard to a suspect's subjective intentions (see *Wegielnik*, 152 Ill. 2d at 427), a defendant, and the courts as well, must be able to rely on an objectively accurate and informative warning as required by the Code. We also observe in passing that dispositive determinations of first offender status are often made only after the fact of a defendant's decision whether to be tested.

We do not believe it is too great a burden to require that the warnings to the motorist comply with the statutes in force. The test to be applied is whether the motorist was given a warning that was objectively accurate and informative to the motorist so that she or he could make an informed choice. See *Estrada*, 313 Ill. App. 3d at 248. This simple test encourages police departments to keep their legal warnings up to date, and it avoids needless litigation regarding the intent and subjective understanding of the defendant and whether the defendant was prejudiced by the warning when deciding to take or refuse a test. To the extent that the *Diestelhorst* decision differs from this approach, we decline to follow it.

In the present case, defendant was given a warning that was not objectively accurate. He was warned that, if he was not a first offender, his license would be suspended for 24 months when in fact the statute provided for a three-year suspension. The parties stipulated to the facts necessary for the trial court to make its decision, and there is no basis for a remand. The trial court properly relied on *Engelbrecht*, and we cannot say that the trial court's decision was against the manifest weight of the evidence.

The judgment of the circuit court of Ogle County is affirmed.

Affirmed.

INGLIS, J., concurs.

JUSTICE THOMAS, dissenting:

I respectfully dissent from the majority's decision. I believe that the trial court's ruling granting defendant's petition to rescind the suspension of his driver's license was against the manifest weight of the evidence.

Contrary to the majority, I do not read *Engelbrecht* as applying a bright-line test to determine whether rescission is an appropriate remedy. This court in *Engelbrecht* held that, "under *the facts of this case*, defendant made a *prima facie* case for rescission of summary suspension. We believe that the warning in issue, by materially misstating the consequences of refusal to submit to the requested test, did not comply with the requirements of section 11—501.1(c) of the Code." (Emphasis added.) 225 Ill. App. 3d at 554. This court held that, once the defendant made his *prima facie* case, the trial court could weigh the evidence to decide whether the *prima facie* case had been negated. *Engelbrecht*, 225 Ill. App. 3d at 554-55. We further noted that the defendant had requested that we order the trial court to grant the defendant's petition to rescind the suspension, but we held that we

could not do so "at this stage of the proceeding" because the State was entitled to put on evidence against the petition. *Engelbrecht*, 225 Ill. App. 3d at 557. We therefore remanded the cause for a hearing on whether the defendant had been properly warned. *Engelbrecht*, 225 Ill. App. 3d at 557.

Based upon *Engelbrecht*, I would find that, although the defendant in this case may have made a *prima facie* case that the warning he received was not objectively accurate, the evidence established that the defendant's *prima facie* case had been negated. Here, the inaccuracies in the warning received by defendant did not materially affect the defendant. I note that, in *Engelbrecht*, the inaccuracies at issue did affect the defendant, but this court nonetheless declined to order the trial court to grant defendant's petition to rescind without affording the State an opportunity to put on evidence against the defendant's petition. Consequently, I do not believe that this court intended the decision in *Engelbrecht* to establish a bright-line test.

In finding that *Engelbrecht* did not establish a bright-line test, I also disagree with the majority that this court should follow the reasoning of the court in *Estrada* and should decline to follow the decision in *Diestelhorst*. I believe a holding requiring a defendant to show that he was prejudiced as a result of inaccurate warnings reflects the intent of the legislature in enacting the implied consent statute (625 ILCS 5/11—501.1 (West 1998)). In fact, our supreme court has stated that the "implied-consent statute, being remedial in nature, should be liberally construed to accomplish [the] goal [of making the highways safer from drivers impaired by drugs or alcohol]." *People v. Wegielnik*, 152 Ill. 2d 418, 425 (1992). A bright-line test is at odds with the liberal construction of the implied consent statute. Accordingly, I dissent from the majority's decision.