Thomas J. TESON, Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

No. 78991.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1996.

Jeremiah W. (Jay) Nixon, Attorney General, Karen King Mitchell, Paul Wilson, Assistant Attorneys General, James A. Chenault, III, Special Assistant Attorney General, Mo. Dept. of Revenue, Jefferson City, for appellant.

Timothy J. Melenbrink, Union, for respondent.

ROBERTSON, Judge.

Section 577.041.1, RSMo 1994, requires that a law enforcement officer arresting a person for driving while intoxicated "shall

inform the person ... that his license shall be immediately revoked upon his refusal to take the test [to determine the alcohol content of his blood]." When an arrestee refuses to submit to a chemical test and the arresting officer fails to use the word "immediately" in warning the arrestee of the consequences of refusal, may the Director of Revenue nevertheless revoke the arrestee's driving privilege?

We hold that section 577.041.1 requires a law enforcement officer who arrests a person for driving while intoxicated to give the warning mandated by the statute when the arrestee refuses to take a test to determine blood alcohol content. When the arresting officer fails to use the words of the statute in reciting the warning, the test to determine whether an arrestee's decision to refuse to submit to a chemical test is an informed one is whether the warning was so deficient as actually to prejudice the arrestee's decision-making process. Finding no prejudice to the arrestee in this case, we reverse the judgment of the trial court and remand for entry of orders denying respondent's petition for review and dissolving the injunction that previously forbad the Director of Revenue from revoking respondent's driving privilege.

## I.

By agreement of the parties, the facts are taken entirely from the arresting officer's report and certified records of the Department of Revenue pertaining to this case.

At 1:46 p.m. on July 15, 1995, Washington, Missouri, Police Officer Mike Stapp stopped a pick-up truck he had seen weaving back and forth across the roadway. He approached the driver, Thomas Teson, and smelled a strong odor of alcohol on Teson's breath. Officer Stapp performed field sobriety tests that revealed Teson's slurred speech, uncertain gait, his inability to touch his fingertips to his thumb, his dilated pupils, his bloodshot eyes, and the presence of nystagmus in each eye. Not surprisingly, Teson admitted to drinking four or five beers earlier in the evening.

On the basis of these observations, Officer Stapp arrested Teson and took him to the Washington police station. There, Officer Stapp asked Teson to take a breathalyzer test. Teson refused. Officer Stapp read Teson the implied consent form warnings from Department of Revenue Form 2389:

You are under arrest for driving while intoxicated. To determine the alcohol-drug content of your blood, I am requesting you submit to a chemical test of your breath. If you refuse to take the test, I must file this sworn affidavit to the Director of Revenue who shall revoke your driver's license for one year. Evidence of your refusal to take the test may be used against you in prosecution in a court of law. Having been informed of the reasons for requesting the test, will you take the test?

Teson refused to take the test. According to the police report, Officer Stapp read the statement to Teson two more times over an approximately thirty-minute period. Each time Teson refused to submit to the chemical test. In addition to the form warning, Officer Stapp asked Teson "if he understood that he would lose his license if he didn't take the test." Moreover, Department of Revenue Form 2389 requires Officer Stapp to affirm that he informed "the arrested person that ... his/her driver's license shall be revoked for one year upon his/her refusal to take the test." Officer Stapp filed the report showing Teson's refusal with the Director of Revenue.

In due course, Teson received notice from the Director that she had revoked his driving privilege. Teson filed a petition for review of the Director's order revoking his driving privilege, claiming that the revocation was arbitrary and capricious because, among other reasons, the arresting officer "never informed Plaintiff [Teson] that Plaintiff's license *may be revoked* upon Plaintiff's refusal to take said [chemical] test." (Emphasis added.)[1] The trial court read *Logan*

---

1. Petition for Review of Order Revoking Driver's License for Refusal to Take Chemical Test at 2. On its face, the petition for review does not plead facts sufficient to raise the issue upon which the trial court based its judgment, namely, that the officer did not use the words "license shall be immediately revoked." § 577.041.1. The state does not argue that the pleadings in this case are

*v. Director of Revenue* [2] to hold that failure of law enforcement personnel to use the word "immediately" in warning an arrestee of the consequences of refusal to submit to a chemical test renders the refusal non-consensual. Expressing disagreement with *Logan*, the trial court nevertheless "reluctantly" granted Teson's petition for review and enjoined the Director from revoking Teson's license.

The Director appealed. The Court of Appeals, Eastern District, adopted a substantial compliance test, found the warning given sufficient, reversed the judgment of the trial court and certified the case to this Court on the basis of the conflict between its decision and the western district's decision in *Logan*. We have jurisdiction,[3] reverse the trial court, and overrule *Logan* as wrongly decided.

## II.

As previously noted, section 577.041.1 requires the arresting officer to "inform the person that ... his license shall be immediately revoked upon his refusal to take the [chemical] test." On appeal, the Director urges that a warning that substantially complies with the statutory warning is sufficient. Teson argues that the failure of law enforcement personnel to use the word "immediately" renders the warning to the arrestee ineffectual, the arrestee's decision to refuse the test uninformed, and the Director's subsequent revocation of the driving privilege invalid.

■ This case does not turn on the failure of Officer Stapp to mimic the statute with exact precision. No court has so held. Indeed, *Logan* held that an arresting officer "need not use the exact wording of the statute," but could use " 'any language which clearly conveys the message that the motorist's license shall be immediately revoked upon refusal to take the test.' " [4] Instead,

Teson complains that failure to use the word "immediately" or some equally striking synonym left Teson uncertain as to his fate should he refuse the test.

■ The purpose of the warning provided in section 577.041.1 is to inform an apparently inebriated driver of the consequences that follow a refusal to consent to a chemical test to determine blood alcohol content. Ignoring the internal inconsistency of a system that demands that inebriated persons be given information from which to render an informed decision, the statute demands that a law enforcement officer provide an arrestee with information upon which the arrestee may make a voluntary, intentional and informed decision as to whether or not to submit to the chemical test. If the purpose of the warning is to provide information, a warning is sufficient for purposes of due process unless the words used either (1) fail to inform the arrestee of all of the consequences of refusal or (2) mislead the arrestee into believing that the consequences of refusal are different than the law actually provides. In each of these instances, the warning fails because it prejudices the arrestee's decisional process and, therefore, renders the arrestee's decision uninformed. Uninformed decisions are non-consensual.

Prior to 1993, section 577.041 required the arresting officer to inform the arrestee that the driver's license "may be revoked" for failure to submit to the chemical test. In 1993, the legislature removed the "may be revoked" language in favor of the current "shall be immediately revoked" verbiage. In *Bennett v. Director of Revenue* [5] and in *Vinson v. Director of Revenue*, [6] the arresting officer's warning said that the Director "may" revoke the arrestee's license (*Bennett*) or that the license "might be" revoked (*Vinson*). Each of these warnings ignored

---

insufficient or fail the requirements of Rule 55.05. Given the state's and the record's silence on this issue, we assume that the trial court permitted an amendment of the pleadings to conform to the evidence, Rule 55.33(b), and will consider the substantive merits of the issue presented.

**2.** 906 S.W.2d 888 (Mo.App.1995).

**3.** Mo. Const., art. V, § 10.

**4.** 906 S.W.2d at 890, quoting *Bennett v. Director of Revenue*, 889 S.W.2d 166, 171 (Mo.App.1994).

**5.** 889 S.W.2d 166 (Mo.App.1994).

**6.** 892 S.W.2d 330 (Mo.App.1995).

the 1993 amendments to section 577.041.1. More important, each warning deviated from the statute by stating the consequences of refusal in terms of a possibility instead of the definite certainty that the 1993 amendment mandated. Thus, both the *Bennett* and *Vinson* warnings bore the potential of misleading the arrestee into believing that the consequences of refusal were different than the law actually provided.

■ In this case, Officer Stapp's warning tracked the 1993 amendment with the exception of using the word "immediately." Officer Stapp warned Teson three times that the Director "shall revoke your license" if Teson refused the test. In addition, Stapp departed from the Department of Revenue's forms to ask Teson "if he understood that he would lose his license if he didn't take the test." In each instance, Officer Stapp spoke of the certainty of Teson's loss of license. He did not provide any information that could mislead Teson.

Teson argues, however, that the statute is clear and unambiguous and requires no construction. He is correct. He contends that the omission of "immediately" from the warning did not give him all of the information that the 1993 amendment to section 577.041.1 requires. Thus, this case turns on whether the information Teson received either omitted a material bit of information critical to Teson's ability to decide or misled Teson by suggesting that the consequences of his actions were different than the law provided. Stated more succinctly, did the absence of the word "immediately" prejudice Teson in his decision-making process?

While it is true, as Teson argues, that the warning he received violated the technical command of the statute, we are unable to perceive any prejudice that resulted from omission of the word "immediately." From the uncontroverted facts, we know that Teson learned from the warnings that his license would be revoked. Those warnings contained no equivocation or ambiguity. Instead, Officer Stapp's words guaranteed a certain loss of the driving privilege upon refusal to submit to the chemical test. That Teson was not told that loss would occur in the next instant is of little moment when one

considers the certainty of the loss Officer Stapp promised with his words. There is simply no basis for any claim by Teson that the consequences of his decision to refuse the chemical test remained a mystery to him after Officer Stapp read him the warning.

We reject Teson's technical compliance argument and hold that the trial court erred in sustaining the petition for review and enjoining the Director from revoking Teson's driving privilege. In adopting an actual prejudice standard, we necessarily reject the western district's holding in *Logan* that technical compliance with the statute is the test by which courts must measure the efficacy of warnings to drunk driving arrestees who refuse to submit to a chemical test. *Logan v. Director of Revenue*, 906 S.W.2d 888 (Mo. App.1995), is overruled.

### III.

The judgment of the trial court is reversed and the cause remanded for entry of orders denying respondent's petition for review and dissolving the injunction that previously forbad the Director of Revenue from revoking respondent's driving privilege.

HOLSTEIN, C.J., and BENTON, PRICE, COVINGTON and WHITE, JJ., concur.

LIMBAUGH, J., concurs in result in separate opinion filed.

LIMBAUGH, Judge, concurring in result.

I write separately to express my disagreement with the rationale stated by the majority, to offer an alternative rationale based on my reading of § 577.041 in its entirety, and to object to the adoption of an impractical actual prejudice standard.

To be sure, the arresting officer's warning set out in § 577.041.1, RSMo 1994, when read in isolation from other parts of the statute, expressly and unequivocally requires that an arrestee be informed that his or her driver's license shall be immediately revoked upon refusal to take the breathalyzer test. The notion that one's driver's license is immediately revoked, however, is qualified by the remaining portions of § 577.041.1 and by the provisions of subsections 2 and 3. Under

these provisions, the arresting officer, in the case of a refusal, is directed to take possession of the arrestee's license, serve a notice of revocation upon the arrestee, and issue a temporary driving permit valid for 15 days. The arresting officer is then required to make a sworn report to the Director of Revenue, and upon receipt of the report, the Director is then obligated to revoke the license. The officer's mere taking possession of the license does not effect a revocation, and only days or perhaps weeks later, when the Director of Revenue formally revokes the license, is the revocation perfected. In fact, there is no provision for a license to be "immediately" revoked, because neither the arresting officer nor the Director of Revenue is given the authority to do so. Moreover, the fact that the arrestee is given a 15–day driving permit is alone sufficient proof that there is no "immediate" revocation.

Read as a whole, the statute is internally inconsistent. Although the arresting officer is required to inform an arrestee that the revocation shall be made "immediately" upon refusal to take the test, that revocation is not immediate, and instead, the arrestee is issued a 15–day temporary permit. Had the arresting officer in this case used the word "immediately" in his warning, he would have misrepresented the true consequences set out in the statute. Furthermore, to have used the word "immediately" in the warning would have rendered the statute an absurdity. In my view, the qualifying terms of the statute effectively delete the word "immediately." Accordingly, it was not impermissible for the arresting officer himself to omit the word "immediately" from the warning because the warning as given was accurate.

The majority not only disregards the other provisions of § 577.041, but also adopts an "actual prejudice test" that is practically unworkable. On the one hand, the State will claim that the absolute certainty of the revocation, rather than the timing of the revocation, is the real import of the warning, the true basis on which the arrestee's decision rests. On the other hand, what drivers, once sobered up and advised by counsel, will ever admit to not having been prejudiced by the failure to include the word "immediately" in

the warning? What drivers would fail to claim that they would certainly have agreed to take the test had they known that their driver's licenses were to be revoked on the spot? They will surely explain that an immediate revocation versus a revocation days, weeks, or months later would have made a substantial difference in their decision. At the least, they would say that the prospect of a later revocation would give them time to make other transportation arrangements with their employer, with their family, and with others. Under these circumstances, I foresee the trial judge's determination of prejudice to amount to little more than speculation.

As stated, in my view, it was not error for the arresting officer to omit the word "immediately" from the warning given to the arrestee; and therefore, I would reverse the judgment of the trial court solely on that ground.