**STATE of Missouri, Respondent,**

v.

**Delbert E. FISHER, Appellant.**

**Nos. WD 51088, WD 52707.**

Missouri Court of Appeals,
Western District.

May 20, 1997.

Rosalynn Koch, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Christine M. Blegen, Assistant Attorney General, Jefferson City, for respondent.

Before HANNA, P.J., and ELLIS and EDWIN H. SMITH, JJ.

ELLIS, Judge.

Delbert Fisher appeals from his conviction for driving while intoxicated, § 577.010,[1] and the subsequent denial of his Rule 29.15 motion for post-conviction relief. Fisher was sentenced to seven years imprisonment as a prior and persistent offender under § 558.016.

In the early morning hours of December 11, 1993, Sergeant Jeff Brown of the Macon Police Department was driving southbound on South Rollins Street when he noticed a car driven by Fisher, also moving southbound, about a block ahead of him. Sgt. Brown watched Fisher's car move entirely into the northbound lane for a short period of time. After Fisher returned to the southbound lane, Sgt. Brown saw him make a wide right-hand turn onto Fifth Street with half of his vehicle crossing into the opposite lane. At this point, Sgt. Brown pulled Fisher over for failing to drive on the correct side of the road.

Sgt. Brown notified the police dispatcher that he was making a traffic stop and then approached Fisher's vehicle. When Fisher was unable to produce a driver's license, Sgt. Brown took him back to the patrol car to run a check on his personal information and the license plate number on the car. As they walked back to the patrol car, Sgt. Brown noticed that Fisher "had a strong odor of alcoholic beverages emitting from him" and that his eyes were watery and bloodshot. Sgt. Brown asked Fisher if he had been drinking, and Fisher responded that he had been. The background check on Fisher revealed that Fisher did not have a driver's license. When Sgt. Brown asked Fisher why

---

1. All statutory references are to RSMo Cum. Supp.1993 unless otherwise noted.

he was driving, Fisher indicated that the woman with him was ill.

Sgt. Brown then asked Fisher to submit to several field sobriety tests. Sgt. Brown first told Fisher to recite the alphabet starting with the letter "A" and ending at the letter "M." Fisher proceeded to recite the entire alphabet, slurring as he did so. Sgt. Brown then asked Fisher to step out of the patrol car for further testing. About that time, Officers Todd Lewis and Gary McQuitty arrived as backup for Sgt. Brown. These officers observed the remaining sobriety tests. They too noticed a strong odor of alcohol on Fisher's breath and Fisher's watery and bloodshot eyes.

Sgt. Brown instructed Fisher to walk eight steps heel-to-toe with his hands at his side, turn around, and walk four steps back. While walking the initial eight steps, Fisher failed to touch heel-to-toe on a couple of steps and failed to walk in a straight line. When he made the turn, Fisher lost his balance and had to stop before walking the four steps back.

Sgt. Brown next told Fisher to stand with his feet together, close his eyes, tilt his head back, extend both arms, and then touch the tip of his nose with his right and then left index fingers three times. Fisher swayed as he touched his nose and was using slow movements. At this point, all three officers were convinced that Fisher was intoxicated.

Sgt. Brown placed Fisher under arrest for driving while intoxicated and transported him to the Macon County Sheriff's Office for processing. At the Sheriff's office, Sgt. Brown read Fisher his *Miranda* rights and then asked him several questions for the alcohol influence report. When Sgt. Brown asked Fisher what he had been doing during the last three hours, Fisher answered, "Riding around." When asked if he had been consuming any alcohol, Fisher replied, "I'm going to say no to that."

Sgt. Brown next read to Fisher from an implied consent form explaining the law regarding blood alcohol tests and then asked

him to take a breathalyzer test. Fisher indicated that he understood the law and refused to take the test. Sgt. Brown waited twenty minutes and gave Fisher the opportunity to call an attorney. Sgt. Brown then again asked Fisher to take the test, explaining to Fisher that his refusal to take the test could be used as evidence against him in court and that the Director of Revenue "may revoke his driving privilege for one year." After Fisher again refused to take the test, he was issued a summons for the traffic violation and for operating a motor vehicle while intoxicated.

On March 1, 1995, Fisher was found guilty by jury in the Circuit Court of Boone County.[2] On May 2, 1995, the court sentenced Fisher to seven years imprisonment as a prior and persistent offender under § 558.016.

On October 30, 1995, Fisher filed a *pro se* motion for post-conviction relief under Rule 29.15. An amended motion was filed by appointed counsel on December 29, 1995. An evidentiary hearing was held on Fisher's motion on February 16, 1996, and the motion was denied on April 10, 1996. Fisher brings two points on appeal.

■ In his first point, Fisher claims testimony by Sgt. Brown regarding Fisher's failure to submit to the breathalyzer test should have been inadmissible because Sgt. Brown's warning that his license "may be revoked" did not comply with the statutory language of § 577.041. That section provides:

The request of the arresting officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to take the test may be used against him and that his license *shall* be immediately revoked upon his refusal to take the test.

§ 577.041.1 (emphasis added).

Fisher relies on *Bennett v. Director of Revenue*, 889 S.W.2d 166 (Mo.App. W.D. 1994), and *Vinson v. Director of Revenue*, 892 S.W.2d 330 (Mo.App. S.D.1995), to sup-

---

2. The case was transferred on May 25, 1994, from the Circuit Court of Macon County to the Circuit Court of Boone County on a motion for change of venue. The case was originally heard on December 29, 1994, but a hung jury lead to a mistrial.

port his claim that Sgt. Brown's warning was insufficient to allow him to make an informed decision on whether to take the test. In *Bennett*, this court held that the use of the phrase "may be revoked," rather than "shall be immediately revoked," did not allow Bennett to make an informed decision on whether to refuse the test and ordered the reinstatement of her revoked license. *Bennett*, 889 S.W.2d at 171. Similarly, in *Vinson*, the Southern District, following *Bennett*, held that the arresting officer's warning that Vinson's license "could be revoked," rather than "shall be immediately revoked," upon his refusal to take a blood alcohol test, prevented Vinson from making an informed decision on whether to take the test and ordered the reinstatement of Vinson's driver's license. *Vinson*, 892 S.W.2d at 332.

The Supreme Court of Missouri subsequently adopted an actual prejudice standard in examining warnings which vary from the statutory language of § 577.041: "When the arresting officer fails to use the words of the statute in reciting the warning, the test to determine whether an arrestee's decision to refuse to submit to a chemical test is an informed one is whether the warning was so deficient as actually to prejudice the arrestee's decision-making process." *Teson v. Director of Revenue*, 937 S.W.2d 195, 196 (Mo. banc 1996). *Teson* noted that the warnings given in *Bennett* and *Vinson* bore the potential of misleading the arrestee as to the consequences of refusal, thereby prejudicing the arrestees' decision-making process. *Teson*, 937 S.W.2d at 198. Both Bennett and Vinson possessed licenses which were immediately revoked upon their refusal to take a blood alcohol test, and given the warning they received, they may not have been aware of the certainty and immediacy of this consequence. We find no such prejudice to Fisher's decision-making process.

Fisher claims that his refusal was improperly used as evidence against him in court. Sgt. Brown specifically warned him of that possible repercussion. Fisher claims, however, that had Sgt. Brown stated that his license "shall be revoked," rather than "may be revoked," he might have submitted to the

test. This contention is belied by the fact that Fisher, unlike the arrestees in *Bennett* and *Vinson*, did not have a license to revoke. There is no prejudicial difference between warning a defendant that his non-existent license "shall be revoked" rather than "may be revoked." Neither warning is likely to affect the defendant's decision-making process. While Fisher claims he might suffer some prejudicial impact from having his non-existent license revoked, he fails to specifically identify any such impact. We find no basis for Fisher's claim that a change in the semantics of Sgt. Brown's warning would have affected his decision-making process. Point denied.

■ In his second point, Fisher claims that the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief because he was denied effective assistance of counsel. Fisher argues his trial counsel was ineffective for failing to question Fisher about his assistance of the police in fingerprinting him. Fisher claims such testimony would have shown that his motor skills were not impaired and supported an inference that he was not intoxicated. Fisher contends that "[e]vidence that he was able to perform one more fine motor test by assisting the police in fingerprinting may have tipped the scale in [his] favor."

Fisher's claim on appeal is not the same claim which he raised in his Rule 29.15 motion. In that motion, Fisher claimed trial counsel was ineffective for not questioning Sgt. Brown, rather than himself, about the fingerprinting.[3] Fisher is not entitled to raise a new claim for the first time on appeal which was not raised in the post-conviction motion or tried by implied consent of the parties at the time of the evidentiary hearing. *Young v. State*, 770 S.W.2d 243, 245 (Mo. banc 1989).

■ Moreover, any claim made by Fisher relating the evidence of his fingerprinting would be meritless. This court's review of a denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly

---

**3.** Fisher did not testify at trial.

erroneous. Rule 29.15(j); *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992). The motion court's findings and conclusions are clearly erroneous if, after a review of the entire record, this court is left "with the definite and firm impression that a mistake has been made." *Id.*

To prevail on his ineffective assistance of counsel claim, Fisher must show both (1) that his trial lawyer's performance was deficient, and (2) that the deficient performance prejudiced his defense. *Ervin*, 835 S.W.2d at 929 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Counsel's performance is assessed by determining whether counsel acted "reasonably within the prevailing professional norms under all circumstances ... [by acting with] the skill and diligence that a *reasonably* competent attorney would exercise under similar circumstances." *Griffin v. State*, 794 S.W.2d 659, 663 (Mo. banc 1990) (emphasis in original) (citations omitted). Prejudice is not presumed and must be demonstrated by showing affirmative proof of a reasonable probability that the result of the proceeding would have been different but for the errors. *State v. Parker*, 890 S.W.2d 312, 322 (Mo. App. S.D.1994).

Fisher's trial counsel testified at the motion hearing that he purposely did not present any evidence of the fingerprinting because he did not want the jury to suspect his client's familiarity with booking procedures as a result of previous arrests. According to trial counsel, he was concerned that this testimony would open the door to evidence relating to the multiple occasions on which Fisher had been arrested in the past.[4] The motion court found that trial counsel's decision not to present evidence of the fingerprinting was a matter of trial strategy.

█ If an attorney believes the testimony of a witness will not unqualifiedly support his client's position, it is a matter of trial strategy not to present that testimony. *Odom v. State*, 783 S.W.2d 486, 488 (Mo.App. W.D. 1990). "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-

conviction relief because strategic choices made after a thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Odom*, 783 S.W.2d at 487 (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2065). The motion court did not err in finding trial counsel's decision to be a matter of trial strategy. Point denied.

The judgment is affirmed.

All concur.

---

4. Fisher's trial counsel also testified that his decision not to have Fisher testify was a matter of

trial strategy which he had discussed with Fisher.