**Devin D. LORTON, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 55050.**

Missouri Court of Appeals,
Western District.

Feb. 23, 1999.

Paul R. Jackson, Kirksville, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, C.J., HANNA and LAURA DENVIR STITH, JJ.

BRECKENRIDGE, Chief Judge.

The Director of Revenue appeals the ruling of the trial court setting aside the revocation of Devin Lorton's driving privileges. The Department of Revenue argues that the trial court erred in finding that Mr. Lorton did not refuse the breath test within the meaning of § 475.041.1, RSMo Supp.1997,[1] and that its ruling was against the weight of the evidence. We find that Mr. Lorton refused the breath test, so we reverse the trial court's judgment and remand the cause for entry of a judgment denying Mr. Lorton's petition for review.

### Facts and Procedural History

The facts in this case are not in dispute. On March 13, 1997, at approximately 6:20 a.m., Officers Jeff Brown and Steve Olinger of the Macon Police Department stopped and arrested Devin Lorton for driving with a revoked license. During the arrest, the officers noticed that Mr. Lorton swayed as he walked and smelled moderately of alcohol. When the officers arrived at the police station, they administered field sobriety tests to determine whether Mr. Lorton was intoxicated. After administering the one-legged-stand test, the walk-and-turn test and the horizontal gaze nystagmus test, Officer Olinger determined that Mr. Lorton was intoxicated and, at 6:39 a.m., advised him that he was under arrest for driving while intoxicated. At 6:41 a.m., Officer Olinger read Mr. Lorton his *Miranda* rights.[2]

Officer Olinger testified that his usual practice is to advise the detainee that following some paper work, he or she would be asked to submit to a "chemical test of their breath" to determine whether he or she is intoxicated. The officer did not specifically recall advising Mr. Lorton of the breath test, although he had no reason to believe he varied from his normal procedure. Following the *Miranda* warnings, Mr. Lorton immediately requested an attorney, at which time the officer "scooted" the phone away

from the wall towards Mr. Lorton, explained how to reach an outside line and made the phone book available to him. Officer Olinger advised Mr. Lorton at that time that he had twenty minutes in which to contact an attorney. During the next twenty minutes, Mr. Lorton made several unsuccessful attempts to contact his attorney. At 7:02 a.m., Officer Olinger repeated the *Miranda* warnings to Mr. Lorton and began to interview Mr. Lorton for the alcohol influence report. Although Mr. Lorton answered a few of the questions, he stopped and advised Officer Olinger that he did not want to do anything else until he had contacted an attorney. He again made an attempt to contact his attorney, but his attempt was unsuccessful. Officer Olinger recommended that Mr. Lorton try to contact a different attorney if his was unavailable, but Mr. Lorton advised him that, "He didn't know any twenty-four hour attorneys."

At approximately 7:08 a.m., Officer Olinger read the Implied Consent Law to Mr. Lorton directly from the alcohol influence report form. Mr. Lorton responded by indicating that he would not do anything until he had contacted his attorney. Officer Olinger informed Mr. Lorton that he had already been given the required time in which to contact an attorney. Officer Olinger testified that after 7:08 a.m., Mr. Lorton never asked to use the phone and he made no attempt to use the phone, which was available in the room. Officer Olinger proceeded to prepare the blood alcohol content verifier for the breath test and, at approximately 7:16 a.m., requested that Mr. Lorton step up to the machine. Officer Olinger inquired whether Mr. Lorton wanted to give a breath sample and informed him that if he did not give a breath sample, he would be issued a summons for "breathalyzer refusal." Mr. Lorton did not blow into the breath test machine and again stated that he would not do anything until he spoke with an attorney. Officer Olinger then issued Mr. Lorton a citation for driving while intoxicated, driving while revoked[3] and breath test refusal.

---

1. All statutory references are to the 1997 Cumulative Supplement to the Revised Statutes of Missouri.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. The charge subsequently filed against Mr. Lorton was operating a motor vehicle without ob-

The Director of Revenue revoked Mr. Lorton's driving privileges for refusing the breath test under § 577.041.3,[4] and Mr. Lorton filed a petition for review in the Circuit Court of Macon County, Missouri. At trial, the State presented evidence, but Mr. Lorton indicated that he had no evidence to present. On September 15, 1997, the trial court entered a judgment enjoining the Director of Revenue from revoking Mr. Lorton's license, based upon its finding that Mr. Lorton did not refuse the test. The Director of Revenue appealed, arguing that the trial court erroneously applied § 577.041.1 to the facts of this case and that its ruling was against the weight of the evidence.

## Standard of Review

■ On review, the trial court's ruling must be upheld unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Borgen v. Director of Revenue*, 877 S.W.2d 172, 174 (Mo.App.1994). When reviewing the revocation of a driver's license for refusal to submit to the breath test, the trial court must determine (1) whether the person was arrested, (2) whether the arresting officer had reasonable grounds to believe that the person was driving while intoxicated, and (3) whether the person refused to submit to the test. Section 577.041.4; *McMaster v. Lohman*, 941 S.W.2d 813, 815 (Mo.App.1997). "The Director of Revenue has the burden of proof and failure to satisfy the burden will result in the reinstatement of the license to drive a motor vehicle." *McMaster*, 941 S.W.2d at 815–16. In this case, the only issue presented is whether Mr. Lorton refused to submit to the breath test.

## Requirements of the Implied Consent Law Not Satisfied

■ The uncontroverted evidence shows that Mr. Lorton did not submit to the breath test. A driver's license may be revoked for refusing to submit to a chemical test, but the revocation is conditioned upon the arresting officer making a "statutorily sufficient 'request'" that the driver take the test. *McMaster*, 941 S.W.2d at 816. A statutorily sufficient request is one which complies with the requirements of § 577.041.1, the Implied Consent Law. *Id.* Section 577.041.1 states, in part:

> The request of the arresting officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to take the test may be used against him and that his license shall be immediately revoked upon his refusal to take the test. If a person when requested to submit to any test allowed under section 577.020 requests to speak to an attorney, he shall be granted twenty minutes in which to attempt to contact an attorney. If upon completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal.

\* \* \*

■ The language requiring a twenty-minute period to contact an attorney was added to the statute in 1991. Prior to 1991, a detainee was entitled to a "reasonable opportunity" to contact an attorney. *See Albrecht v. Director of Revenue*, 833 S.W.2d 40, 42 (Mo.App.1992). The twenty-minute provision has been interpreted as a legislative definition of "reasonable opportunity." *See Wall v. Holman*, 902 S.W.2d 329, 331 (Mo.App. 1995). "Where a motorist requests and is denied a reasonable opportunity to contact

taining a new driver's license after being revoked on June 12, 1994, for points, which was charged as a violation of § 302.200, RSMo 1994. Mr. Lorton's license had previously been revoked for driving while intoxicated. Although the period of his revocation had expired, he was ineligible to have his license reinstated until April 4, 1999, because the Director of Revenue had issued a "5 Year Denial (Alcohol Involved)." *See* § 302.060(10) (the director of revenue shall not

issue a license for five years to any person who has been convicted twice of driving while intoxicated, when the convictions occur within a five-year period and meet the criteria of the statute).

**4.** Section 577.041.3 was amended in 1998, but the prior version of the statute governs the issues in this appeal.

an attorney before deciding whether to submit to a breathalyzer test, refusal is not unequivocal and license revocation cannot be upheld." *Id.*

The case in which this court recently held that the twenty-minute waiting period required by § 577.041.1 was not triggered until a person receives a statutorily sufficient recitation of the Implied Consent Law was *McMaster v. Lohman,* 941 S.W.2d 813. In *McMaster,* as the police officer was transporting Mr. McMaster to the police station, he recited "unspecified excerpts of the Implied Consent Law" to Mr. McMaster, who was under arrest for driving while intoxicated. *Id.* at 815. At the police station, the officer read Mr. McMaster the Implied Consent Law at 5:48 a.m. *Id.* As the officer was attempting to read him the *Miranda* warning, Mr. McMaster interrupted to solicit legal advice from the officer and to request to speak to an attorney. *Id.* "The officer responded that he could not provide legal advice and that Mr. McMaster would have an opportunity to contact an attorney immediately after the officer had advised him of his rights." *Id.* The police officer noted in his report that Mr. McMaster was advised of his *Miranda* rights at 5:49 a.m. *Id.* Thereafter, Mr. McMaster was allowed to use a phone to contact an attorney, but was unsuccessful. *Id.* While Mr. McMaster was attempting to call an attorney, and without further conversation with Mr. McMaster, the police officer made a report at 5:50 a.m. that Mr. McMaster refused the breath test. *Id.*

Reversing the trial court's revocation of the driver's license, the court stated, "[Section] 577.041.1's twenty-minute waiting period begins running immediately after the officer has informed the driver of the Implied Consent Law." *Id.* at 817. The court explained:

> Section 577.041 establishes a required and deliberate sequence of events—a request to submit to chemical testing that informs the driver of: (1) the officer's reasons for requesting the test; and provides (2) that evidence of a refusal to take the test may be used adversely against the driver; and (3) that the driver's license shall be immediately revoked upon a refusal to take the

test. Until the three requirements of section 577.041 are first met, the section 577.041 twenty-minute waiting period is not triggered.

*Id.* at 816.

The *McMaster* court further held that in the context of the Implied Consent Law, "a 'refusal' means declining to take the chemical test when requested to do so of one's own volition." *Id* at 817. No refusal to submit to a chemical test occurs under § 577.041.4(3) when a driver conditions a refusal on consulting with counsel, but is not given a reasonable opportunity to attempt to do so. *Id.* Since there is a statutory right under § 577.041.1 for detained persons to consult an attorney to assist in the decision whether to submit to a chemical test to determine the percentage of alcohol within their blood, the statute does not impute the request to speak to an attorney as refusal to submit to the test. *Id.* The court went on to explain that the objective of § 557.041.1 is satisfied if the driver is given the opportunity to attempt to contact an attorney and the twenty-minute statutory period expires without contact being made or the driver abandons the attempt. *Id.* "A request to speak with an attorney after the provisions of the Implied Consent Law are stated to the arrestee abates the process for the twenty-minute waiting period or until the driver ceases attempting to contact a lawyer and indicates that he intends to make no additional attempts to contact an attorney within the twenty minute period." *Id.*

In this case, Mr. Lorton was advised of his *Miranda* rights upon his arrest. After Mr. Lorton requested an attorney, he was given twenty minutes in which to contact counsel. Although Mr. Lorton was given the twenty-minute period, it was prior to, rather than after, he was read the Implied Consent Law. After Officer Olinger read the Implied Consent Law to Mr. Lorton, only eight minutes elapsed before Mr. Lorton was asked to submit to the test and he was written up for a refusal. Therefore, the requirements of § 577.041.1 were not satisfied.

### No Prejudice as a Result of Variation from Requirements of § 577.041.1

The fact that the requirements of § 577.041.1 were not satisfied does not automatically entitle Mr. Lorton to relief, however, because in *Teson v. Director of Revenue*, 937 S.W.2d 195, 198 (Mo. banc 1996), the Supreme Court of Missouri adopted an actual prejudice standard in determining whether relief should be granted when the Implied Consent warnings vary from the statutory language of § 577.041.

In *Teson*, the driver was given a warning about the Implied Consent Law which varied from the exact language of the statute. *Id.* The statute requires an officer to warn a driver that if he or she does not consent to the breath test, his or her license "shall be immediately revoked." Section 577.041.1. The officer in *Teson* omitted the word "immediately" and instead warned the driver that the Director of Revenue "shall revoke your license." 937 S.W.2d at 198. The Court found, however, that "[w]hile it [was] true ... that the warning he received violated the technical command of the statute, [it was] unable to perceive any prejudice that resulted from the omission...." *Id.* The Court rejected the driver's "technical compliance" argument and adopted an actual prejudice standard. *Id.* Under the actual prejudice standard, the issue is "whether an arrestee's decision to refuse to submit to a chemical test is an informed one," so it must be determined "whether the warning was so deficient as actually to prejudice the arrestee's decision-making process." *Id.* at 196.

The principles of *Teson* are applicable to this case. Here, it was the sequence of the warning and the granting of a twenty-minute period for contacting an attorney which was not in compliance with the statute. In considering whether Mr. Lorton suffered any actual prejudice as a result of the reversal of the sequence, there is the question of whether prejudice to Mr. Lorton was eliminated by the fact that he was afforded over twenty minutes in which to attempt to contact an attorney prior to being advised on the Implied Consent Law. This issue will be left for another day, however, since Mr. Lorton's lack of a driver's license at the time he was arrested resolves the issue of actual prejudice.

■ At the time Mr. Lorton was arrested, taken to the Macon Police Department, and requested to submit to a chemical test of his breath, his license had been revoked as the result of a prior conviction for driving while intoxicated. Although his one-year period of revocation had ended, Mr. Lorton was not eligible under the law to have his license reinstated until April 4, 1999. *See* § 302.060(10). This court has previously considered whether a driver whose license was revoked at the time he was arrested for driving while intoxicated was prejudiced by a variance in the Implied Consent warning. *See State v. Fisher*, 945 S.W.2d 70, 73 (Mo. App.1997).

In *Fisher*, the police officer that arrested the defendant advised him, under the Implied Consent Law, that his license "may be revoked" and did not tell him it "shall be revoked." *Id.* at 72. This court found that, as the defendant did not have a license to revoke, "[n]either warning is likely to affect the defendant's decision-making process." *Id.* at 73. Therefore, the defendant was not prejudiced under the *Teson* standard. *Id.*

This same reasoning applies to Mr. Lorton. Although his period of revocation had expired, he had no license and was not eligible to have his license reinstated for two more years. Any defect in the Implied Consent warning was, therefore, unlikely to have influenced his decision-making process. In fact, had Mr. Lorton been given an attorney's advice about the law, and had he nonetheless refused to take the test, he would be in the position in which he now finds himself. Had he been given this advice, and had he then decided to take the test, his license would not have been revoked for failure to take the test. However, this would have had no effect on his right to drive, for, at the time he was stopped, Mr. Lorton did not have a license, and his license was not subject to reinstatement until April 4, 1999, two years later. Thus, Mr. Lorton's failure to take the test had no effect on his legal rights. Therefore, no actual prejudice occurred from failure to allow Mr. Lorton twenty minutes in

which to contact an attorney after the Implied Consent Law was read to him.

Because Mr. Lorton was not actually prejudiced by Officer Olinger's failure to comply with the statute, his failure to submit to the chemical test was a refusal, as a matter of law. The trial court erred when it found that he had not refused the chemical test and reinstated his driving privileges. Therefore, the judgment of the trial court is reversed and the cause is remanded for entry of a judgment denying Mr. Lorton's petition to review.

All concur.