**Shawn A. HUGHSON, Respondent,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Appellant.**

No. WD 59235.

Missouri Court of Appeals, Western District.

Submitted May 15, 2001.

Decided Aug. 7, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Sp. Asst. Atty. Gen., James A. Chenault, III, Jefferson City, for appellant.

George E. Proctor, Jr., Kansas City, for respondent.

Before EDWIN H. SMITH, P.J., JAMES M. SMART, JR., and VICTOR C. HOWARD, JJ.

**PER CURIAM:**

This is an appeal taken by the Director of Revenue ("Director") from the trial court's reinstatement of Respondent Shawn A. Hughson's driving privileges after a hearing on Hughson's petition to review the Director's revocation of his driving privileges under § 577.041, RSMo Cum.Supp.1999.

The judgment is affirmed.

**Factual and Procedural Background:**

On April 22, 2000, Shawn Hughson ("Hughson") was arrested for driving while intoxicated. Based upon a determination that Hughson had refused to submit to a blood alcohol concentration (BAC) test, the Director revoked his driving privileges for a period of one year, pursuant to § 577.041.[1] Hughson petitioned for judicial review of his driving revocation, as is his privilege under the statute, and the cause went to trial on September 7, 2000.

At two trial settings, the arresting officer failed to appear. As a consequence, the Director introduced Hughson's arrest and driving records, which showed the following: The arresting officer, Trooper Root, first took notice of Hughson in the early morning hours of April 22, 2000,

when the vehicle he was driving made two left turns without signaling. When the trooper pulled Hughson over, he detected a strong odor of intoxicants. The trooper administered two field sobriety tests, which Hughson failed. After Hughson refused to submit to a portable breath test, the trooper placed him under arrest and transported him to the Caldwell County sheriff's office. The narrative portion of the report states that the trooper read the "implied consent warning" and *Miranda* rights to Hughson and requested he submit to a blood alcohol content (BAC) chemical test of his breath, which, according to the report, Hughson refused. However, there is a portion of the report containing a box next to the remark "Chemical Test Refusal (Officer Must Mark Box If Subject Refused Test)." This box was not marked. Hughson did not present evidence. The court found that the Director failed to sustain his burden because "the record establishe[d] that the required procedures for the revocation of petitioner's driving privilege for refusal to submit to a chemical test were not followed." The Director now appeals the trial court's setting aside of the revocation of Hughson's driving privileges.

---

1. Section 577.041, states in pertinent part:

   1. If a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024 or 565.060, RSMo, or section 577.010 or 577.012. *The request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test.* ... The officer shall issue a temporary permit, on behalf of the director of revenue, which is valid for fifteen days and shall also give the person a notice of such person's right to file a petition for review to contest the license revocation.

   2. The officer shall make a sworn report to the director of revenue, which shall include the following:

   (1) That the officer has:

   (a) Reasonable grounds to believe that the arrested person was driving a motor vehicle while in an intoxicated or drugged condition; or

   * * *

   (2) That the person refused to submit to a chemical test;

   * * *

## Standard of Review

This court will affirm the trial court's findings and the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Discussion

■ In his sole point on appeal, the Director contends the trial court erred in setting aside the revocation of Hughson's driving privileges because the judgment was against the weight of the evidence and not supported by substantial evidence. The Director contends that he proved at trial the three elements necessary for a *prima facie* case against Hughson, showing that: (1) Hughson was arrested; (2) the trooper had reasonable grounds to believe that Hughson was driving a motor vehicle while in an intoxicated condition; and (3) Hughson refused to submit to a chemical test.

The Director points out that Hughson did not present any evidence at trial, therefore the only evidence presented was the uncontroverted evidence presented by the Director, which consisted of the Alcohol Influence Report and Hughson's driving record, which was sufficient evidence to satisfy the three requisite elements necessary to sustain the Director's burden of proof. First, the evidence showed that Hughson was arrested. The trooper's narrative stated that he "placed Mr. Hughson under arrest" and that he informed Hughson that he was under arrest for driving while intoxicated, as part of the reading of the implied consent warning that is statutorily mandated.

Second, the Director says, the evidence showed that the trooper had reasonable grounds to believe that Hughson was driving while in an intoxicated condition. The trooper described in his narrative the strong odor of intoxicants about Hughson; the fact the Hughson failed two field sobriety tests; the fact that Hughson refused to submit to a "gaze nystagmus" test; and the facts that Hughson had bloodshot eyes, slurred speech, and poor ability to follow instructions, all of which gave the trooper reasonable grounds to believe that Hughson was driving while intoxicated.

Finally, the Director argues the evidence showed that Hughson refused to submit to a BAC test, the last element required for proving the Director's *prima facie* case. The narrative portion of the report states that Trooper Root informed Hughson of his reasons for requesting a chemical test of Hughson's breath, and Hughson refused to submit to such a test. According to the Director, the trooper's Alcohol Influence Report ("AIR") shows Trooper Root indicated Hughson's refusal on the report, noting the time of refusal as 2:10 a.m. According to the Director, these records alone were sufficient to make a *prima facie* showing that Hughson refused to submit to a chemical test.

No trial transcript was available to submit to this court in this case, according to the appellant Director. The Director points out in his brief, that the absence of a trial transcript, however, does not preclude review by this court. The Director asserts that although a recognized remedy in cases where the record on appeal is inadequate is to reverse the judgment and remand for a new hearing, (*citing Oyler v. Director of Revenue*, 10 S.W.3d 226, 228 (Mo.App.2000)[2]), the record on appeal in

**2.** The court in *Oyler* reversed the judgment, reinstated Oyler's driver's license, and re-

manded for a new hearing on the record, stating:

this case is sufficiently adequate for the court to review the merits of the case. The written docket sheets and judgment of the trial court clearly indicate the Director's certified records were received into evidence. Furthermore, the evidentiary basis for the trial court's judgment is explicitly memorialized in a finding that "the *record* establishes that the required procedures ... were not followed...." The Director contends this statement

> The docket entry provides an inadequate record for appellate review. We have not been given a transcript of the hearing because, according to the clerk of the court, none is available. We know from the judge's handwritten docket entry, that at the hearing before the judge, the Director called *no witnesses and relied solely on the Alcohol Influence Report*. It is not clear from the record if Mr. Oyler presented any evidence. The Director implies that the report was admitted into evidence without objection, but no transcript exists to confirm this point. Nothing in the docket entry indicates whether Mr. Oyler objected or was given an opportunity to object to the admission of the Alcohol Influence Report into evidence. The Director also states that Mr. Oyler did not present any contrary evidence. However, due to the lack of a record to review, we cannot determine what, if any, evidence Mr. Oyler presented or whether he testified.
> ❉ ❉ ❉
> Without a hearing transcript, we are unable to conduct a fair appellate review for both parties. Although the Director properly requested a transcript, none could be provided. When, as here, the record on appeal is inadequate through no fault of the parties, the appropriate remedy is to reverse the judgment and remand the case for a new hearing.

*Oyler,* 10 S.W.3d at 228.

3. In *Sarkis,* where the record showed, unequivocally, that the respondents failed to maintain financial responsibility; that the respondents admitted they did not have liability insurance on the date of the accident; and that the respondents did not produce any evidence to the contrary, the court determined:

shows that the judgment of the trial court rested exclusively upon the sufficiency of the records presented, and that the record on appeal is therefore sufficient for this court to review the findings of the trial court and reach a "reasonable, fair, and accurate" conclusion. *See Sarkis v. Director of Revenue,* 946 S.W.2d 773, 774 (Mo.App.1997)[3] and *Kinder v. Director or Revenue,* 895 S.W.2d 627, 629 (Mo.App. 1995).[4]

> We note that the court's failure to preserve the record as required by § 512.180.2 normally mandates a remand. However, on the particular facts of this case, we believe reversal is the more appropriate remedy. Appellant has the duty to provide a record containing the necessary information upon which we can rule with reasonableness, fairness and accuracy. Here, Director requested a transcript of the proceeding before the circuit court, and was told by the circuit court clerk that no transcript existed. In this case, the legal file provides enough information to enable us to reach a reasonable, fair and accurate conclusion.... The order of the circuit court voiding the suspension is reversed.

*Sarkis,* 946 S.W.2d at 774.

4. In *Kinder,* also, the appellant contended the circuit court's failure to preserve a record of its *de novo* proceeding precluded appellate review and required remand for a hearing on the record, but the appellate court disagreed, stating:

> If the evidentiary basis for the circuit court's decision is unclear from the record on appeal, and no transcript of the proceeding is available, we must remand so both parties have an opportunity to try the case with a proper record. Here, Director requested a transcript of the proceeding before the circuit court and was told by the circuit court clerk no such transcript existed. Licensee asks that we remand. However, on the particular facts of this case, we believe reversal is the more appropriate remedy.... The administrative case file represents the entirety of the evidence presented to and relied upon by the circuit court. As such, it is the only record we consider on appeal.... Because we have considered the totality of evidence that was

In response, Hughson asserts the trial court correctly ruled to reinstate his driving privileges in that the Director failed to submit sufficient evidence to show that he refused to take a chemical test of his blood alcohol level. Hughson states the Director failed to proved an uncontroverted *prima facie* case of refusal, because the evidence showed: (1) the trooper failed to mark the appropriate "chemical test refusal" box on the AIR report which stated that it "must" be checked in case of a refusal; and (2) the trooper failed to timely advise Hughson of his *Miranda* rights and the ramifications of an alcohol chemical test.

■ Hughson points out that the Director bears the burden of proving that Hughson refused to submit to an alcohol chemical test. "The Director bears the burden of proof, and failure to satisfy the burden will result in the reinstatement of the license to drive a motor vehicle." *Lorton v. Director of Revenue*, 985 S.W.2d 437, 440 (Mo.App.1999). Here, the Director was forced to request two continuances because twice the arresting officer failed to appear for trial. Hughson was present each time, but because the arresting officer had not appeared by the third setting, the Director presented only the alcohol influence report, over Hughson's objection, as evidence at trial. Hughson submits these records were insufficient to prove that he refused a BAC test, because on the copy of the AIR report that Hughson presents in the appendix to his brief, the box next to "Chemical Test Refusal (Officer Must Mark Box If Subject Refused Test)" is clearly not marked. Hughson asserts, based on the fact that the box was not marked, the court reasonably inferred the officer's report was self-contradictory and therefore lacking in credibility.

before the circuit court, there is no need to remand the case for a hearing on the record.

Hughson contends that the fact that the box is not checked should be dispositive in this case.

Hughson states, in addition, the trial court also considered the fact, as established by the officer's report, that Hughson did not receive his *Miranda* rights until 2:11 a.m., which was one minute after his refusal at 2:10 a.m., although the narrative portion of his report indicated just the opposite of the report. Whether or not the *Miranda* warning was required in this case, Hughson asserts that the court was able to see from the report itself that the officer was not being truthful about the timing of the *Miranda* warning and about whether Hughson refused the BAC test. Hughson states: "The continued narrative was obviously a late report submitted in an attempt to bootstrap obvious deficiencies in the Alcohol Influence Report. Since these deficiencies are apparent from the report itself, the Court was certainly justified in ruling as it did."

The Director argues in reply that the arresting officer *did* mark the box next to "Chemical Test Refusal." Counsel for the Director, at oral argument, offered a copy of the report that *does* have a mark in the box. That copy is not, however, the copy in the legal file. The Director next asserts that the question of whether this box is marked is, in any event, immaterial to the merits of this case. The Director says that "[g]iving warnings outlined in the AIR is sufficient to satisfy statutory requirements even without an indication that the arresting officer checked the 'Chemical Test Refusal' box." The Director cites *Whitaker v. Director of Revenue*, 943 S.W.2d 279, 280 (Mo.App.1997), which is a case dealing with adequacy of warning but has nothing to do with whether the box

*Kinder*, 895 S.W.2d at 629–30.

was checked on the report. Finally, citing *Sweatt v. Director of Revenue,* 940 S.W.2d 540, 542–43 (Mo.App.1997), the Director asserts: "Evidence showing that the arresting officer gave proper *Miranda* warnings to Hughson was not required because this case was civil in nature and a request to take a chemical test does not involve interrogation of an arrested person."

In support of his arguments, the Director relies upon cases dealing with the issue of the Director's burden generally in presenting evidence that the driver refused the test, or evidence as to the advice which must be given the driver. Reviewing courts may reverse a trial court refusal to uphold a suspension where there has been only a technical non-compliance with regulations related to the admission of a test. *See, e.g., Shine v. Director of Revenue,* 807 S.W.2d 160 (Mo.App.1991). It is not clear that this case is a mere technical non-compliance. No case we have seen has dealt with the issue of the effect of the failure of an officer to check a box which "must be checked" in the case of a test refusal.[5] The Director presents no authority for the proposition that the trial court was obligated to ignore the fact that the "must check" box was not checked. We also note that the case had twice been continued to allow the officer to appear, and he never did appear. The trial court could reasonably have inferred that the officer wished to avoid cross-examination on the contents of his report. The officer's failure to appear, plus the failure to check the "chemical test refusal" box, plus the apparent contradiction concerning the timing of the warning, may have caused the trial court to conclude that the report,

considered by itself, was not enough to create a *prima facie* case in the Director's favor. We conclude that the trial court could have reasonably believed there was reason to reject the Director's contradictory evidence. Accordingly, we need not address the issue of whether the Director showed the necessary warnings were given, because we agree that, under the circumstances of this case, the apparent failure to check the box that "must be checked" is dispositive.

The judgment of the trial court is affirmed.

---

5. At oral argument, counsel for the Director was unable to explain the significance of, or reason for, the "must be checked" language by the box labeled "chemical test refusal." Counsel believed it was related to the Director's internal processing of reports. There

is no evidence, however, that the trial court understood the statement that the box "must be checked" meant merely that the Director wanted the box checked for purposes of administrative processing.